No. 2--08--0132    Filed:  11-20-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re VAL Q., Alleged to be a Person Subject to Involuntary Admission | ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County.

No. 07--MH--274 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Val Q., Respondent-Appellant). | ) ) ) ) | Honorable Thomas C. Dudgeon, Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Respondent, Val Q., appeals from the trial court's order authorizing the involuntary administration of psychotropic medication to respondent for up to 90 days pursuant to section 2--107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2--107.1 (West 2006)).  Respondent contends that the trial court erred in granting the petition where the State failed to prove by clear and convincing evidence that (1) she lacked the capacity to make a reasoned decision concerning her own treatment, (2) the benefits of treatment outweighed the harm, and (3) she was suffering because of her mental illness or exhibited a deterioration in her ability to function. We agree with her second contention and reverse accordingly.

On December 10, 2007, respondent was brought into the emergency room of Good Samaritan Hospital for bleeding from rectal cancer.  Respondent was also diagnosed with hypertension. Respondent was refusing medical treatment for both her cancer and her hypertension because she did not believe the doctors' diagnoses or their prognosis for respondent if the medical conditions

were left untreated. It was also reported to hospital staff that respondent was sleeping in the hallways of her apartment building because she believed her apartment was being gassed. Because respondent was exhibiting disorganized thinking and behavior, she was assessed by psychiatrist Dr. Bhatt.

After observing respondent and administering neuropsychological testing, Bhatt diagnosed respondent as suffering from a mental illness, namely, a delusional disorder. Bhatt opined that respondent's symptoms had been long standing. Bhatt recommended psychotropic medication for respondent but respondent simply refused. Respondent did not explain why she was refusing psychotropic medication and Bhatt opined that respondent's refusal was a direct result of her delusional thinking.

Bhatt petitioned for authorization to administer Invega as the primary medication. As alternatives, Bhatt was seeking to administer Haldol Decanoate and Risperdal. According to Bhatt, these medications are antipsychotics that would improve respondent's thinking. With improved and more organized thinking, respondent would be more compliant with receiving treatment for her cancer and hypertension. The most common side effect of all three medications was sedation. Haldol Decanoate also had a possible side effect of involuntary shaking of the hands. Bhatt testified to the specific dosages he was seeking to administer for each medication. He further testified that there was no contraindication between the medications he was recommending and respondent's cancer or hypertension.

Bhatt opined that, based on respondent's mental illness, she would need psychotropic medication long term. Without psychotropic medication, respondent would remain guarded and suspicious and would continue living in an unsafe environment, namely, sleeping in public hallways

because of her delusions that her apartment was being gassed. Furthermore, without psychotropic treatment, respondent's recovery from cancer was in question.

On cross-examination, Bhatt testified that, upon respondent's admission to the hospital, an EKG showed an abnormal QT interval. Apparently, the QT interval measures the time it takes the heart to reset itself between beats. See Janssen Pharmaceutica, Inc. v. Bailey, 2002--CA--00736--SCT (99), 878 So. 2d 31, 37 (Miss. 2004). According to Bhatt, an abnormal QT interval is "not that significant." However, Bhatt also acknowledged that the medication he was seeking to administer had the potential to increase an already-irregular QT interval, which in turn could increase the risk of arrhythmia and heart attack. Bhatt testified that, if respondent had agreed to take psychotropic medication, Bhatt would have first consulted with respondent's primary care physician before administering the medication. If the primary care physician expressed any concern with administering the medication, Bhatt would have followed the doctor's recommendations, including a recommendation to consult a cardiologist. Bhatt had not consulted with respondent's primary care physician, because respondent was not receiving any medication. Bhatt would begin involuntary treatment only after consulting with respondent's primary care physician.

Bhatt testified that there was no increased risk in administering the petitioned-for psychotropic medications to elderly patients. These medications carried a "black-box warning" for patients at risk of stroke or heart attack, if the patients also had dementia. Bhatt performed tests that showed that respondent did not suffer from dementia. Thus, apparently, the "black-box warning" did not apply to respondent.

Next, respondent's sister, Mildred Blacke, testified that she had been appointed respondent's temporary guardian. According to Blacke, respondent had suffered from mental illness "for awhile"

and was psychiatrically hospitalized several times in the past few years. Doctors had recommended psychotropic medication for respondent in the past, but respondent had always refused. Blacke opined that respondent was unable to make decisions concerning her health and safety because respondent would sometimes go "missing" for days.

Respondent testified that she was 78 years old. She acknowledged that she was not sleeping in her apartment because she felt that it was unsafe. Respondent testified to two prior "gas incidents" where gas vapors permeated her apartment building. According to respondent, the existence of the gas vapors was verified by her neighbors and the vapors were found to be coming from the boiler room of the apartment building.

Respondent did not want to take psychotropic medications, because of potential side effects. Respondent was first diagnosed with cancer at Loyola Medical Center but she refused treatment at Loyola because she was asked to sign forms without being allowed to read them. Respondent understood that cancer treatment was necessary. She agreed to receive the treatment, but not at Good Samaritan Hospital.

The trial court found that the State had sustained its burden of proof by clear and convincing evidence, and the court authorized the petitioned-for treatment in the dosages testified to by Bhatt. The court found that the evidence showed that the benefits of treatment outweighed the harm. The court, however, noted the possible risk of heart attack associated with the medications and found that this risk "will be considered by Dr. Bhatt" in consultation with a cardiologist, if necessary. Thus, the court authorized involuntary treatment with the "initial caveat," "as has been recommended by Dr. Bhatt, that there be a consultation, if necessary, to determine the risk to [respondent's] heart of taking these medications." Lastly, the court commented: "I do not intend to substitute my judgment

for that of the physician's [sic], but only to recognize that that is one of the caveats that they have and would clear before giving these medications, in keeping with good and standard medical practice." Respondent timely appeals, challenging the trial court's order authorizing involuntary treatment.

Before we address the merits of the case, we note that the appeal is moot because the 90-day period covered by the trial court's order has already expired. In re Robert S., 213 Ill. 2d 30, 45 (2004). "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." In re J.T., 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. In re Barbara H., 183 Ill. 2d 482, 491 (1998). Reviewing courts, however, recognize exceptions to the mootness doctrine, such as (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the involuntary treatment order could return to plague the respondent in some future proceedings or could affect other aspects of the respondent's life. In re Alfred H.H., 233 Ill. 2d 345, 355-62 (2009); J.T., 221 Ill. 2d at 350; In re Wathan, 104 Ill. App. 3d 64, 66 (1982).

Two of the mootness exceptions apply here. First, this being respondent's first involuntary treatment order, there are collateral consequences that may plague respondent in the future. Compare In re Meek, 131 Ill. App. 3d 742, 745 (1985) (as the case appeared to be the respondent's first

involuntary commitment, court found that the collateral-consequences exception applied), with Alfred H.H., 233 Ill. 2d at 362-63 (because the respondent had multiple prior involuntary commitments and was a felon, there were no collateral consequences that would stem solely from the present adjudication; every collateral consequence that could be identified already existed as a result of the respondent's previous adjudications and felony conviction). The evidence shows that respondent will need psychotropic medication long term. Thus, it appears that respondent will very likely be subject to future proceedings and that her past involuntary treatment could adversely affect her at that time. See Alfred H.H., 233 Ill. 2d at 362 (collateral-consequences exception applies where reversal could provide a basis for a motion in limine that would prohibit any mention of the hospitalization during the course of another proceeding). Furthermore, the record shows that respondent was appointed a temporary guardian at one point. The treatment order at issue here could possibly be used in some future guardianship proceedings. Thus, the collateral-consequences exception applies.

This case also falls within the capable-of-repetition exception. This exception has two requirements. "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation." Alfred H.H., 233 Ill. 2d at 358. "Second, there must be a reasonable expectation that *** 'the same complaining party would be subjected to the same action again.' " Alfred H.H., 233 Ill. 2d at 358, quoting Barbara H., 183 Ill. 2d at 491. This means that the present action and a potential future action must have a substantial enough relation that the resolution of the issue in the present case would have some bearing on a similar issue presented in a future case involving the respondent. Alfred H.H., 233 Ill. 2d at 360.

First, the challenged action was obviously too short to be fully litigated during the pendency of the order. See Alfred H.H., 233 Ill. 2d at 358. Second, at least one issue presented here, and any resolution thereof, would bear on a subsequent case involving respondent. We recognize that our supreme court in Alfred H.H. found that the capable-of-repetition mootness exception did not apply in that involuntary commitment case, because the respondent challenged whether the specific facts that were established during the hearing were sufficient to prove that the respondent was a danger to himself or to others. Alfred H.H., 233 Ill. 2d at 360. Because the facts would necessarily be different in any future commitment hearing, the court found that the issues presented in the case before it would have no bearing on similar sufficiency-of-the-evidence issues presented in subsequent cases. Alfred H.H., 233 Ill. 2d at 360. We agree with respondent, however, that this case is distinguishable. Here, within respondent's evidentiary arguments is a contention that the trial court erred by delegating to physicians its duty of assessing the risks of the treatment. It is reasonably likely that the resolution of this issue would affect future cases involving respondent, because respondent will likely again be subject to involuntary treatment and the court will likely again commit the same alleged error. Review is, therefore, appropriate.

Turning to the merits, the dispositive issue is whether the State failed to prove by clear and convincing evidence that the benefits of treatment outweighed the harm. Although respondent failed to raise this issue in the trial court, it affects a substantial right and, therefore, we review it for plain error. See 134 Ill. 2d R. 615(a); In re Cynthia S., 326 Ill. App. 3d 65, 68 (2001) ("Fundamental liberty interests are involved in the involuntary administration of medication for mental health purposes").

Given the potential serious side effects of psychotropic medication, courts must be cautious in the entry of orders allowing hospital staff to involuntarily administer these drugs to persons suffering from mental illness. In re David S., 386 Ill. App. 3d 878, 883-84 (2008). Section 2--107.1 of the Code (405 ILCS 5/2--107.1 (West 2006)) delineates the nonemergency circumstances under which psychotropic medication may be administered against the wishes of the recipient. Under this section, psychotropic medication may be administered to one who is receiving mental health services, provided the standards and procedures set out in the section are satisfied. In re C.E., 161 Ill. 2d 200, 204 (1994). These guidelines are in place in order to provide the respondent with due process. David S., 386 Ill. App. 3d at 881. Section 2--107.1 directs that the forced administration of psychotropic medication is authorized only if the court finds evidence of each of the following elements, by clear and convincing proof:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the medication will outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment."  405 ILCS 5/2--107.1(a--5)(4) (West 2006).

Clear and convincing evidence is defined as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question.  In re Israel, 278 Ill. App. 3d 24, 35 (1996).  As a reviewing court, we give great deference to the trial court's factual findings (In re Kness, 277 Ill. App. 3d 711, 718 (1996)), but we will reverse an order allowing the involuntary administration of psychotropic medication when the trial court's findings are against the manifest weight of the evidence.  In re John R., 339 Ill. App. 3d 778, 781 (2003).

Here, the trial court's order must be reversed because there was insufficient evidence to support the trial court's finding that the benefits of the medication outweighed the harm.  "The statutory scheme of the Code requires 'specific evidence [of] the benefits and risks of each medication *** so that the trial court may determine whether the State can demonstrate by clear and convincing evidence that the benefits of the proposed treatment outweigh the potential harm.' "  In re C.S., 383 Ill. App. 3d 449, 452 (2008), quoting In re Alaka W., 379 Ill. App. 3d 251, 263 (2008).  Thus, the State must produce evidence of the benefits of each drug sought to be administered as well as the potential risks of each drug.  Alaka W., 379 Ill. App. 3d at 263.  If the State fails to produce such evidence, we must reverse the involuntary treatment order.  C.S., 383 Ill. App. 3d at 452 (information regarding a medication's effect on respondent in the past was "key information,"

without which the trial court could not determine whether the benefit of the medication outweighed its potential harm).

Ths State's evidence failed in this regard. The evidence showed that respondent was admitted to the hospital with an abnormal QT interval. The evidence further showed that the proposed psychotropic medications could increase the already-abnormal interval, creating a risk of heart attack. Accordingly, Bhatt admitted that he would first consult with respondent's primary care physician and a cardiologist, if necessary, before administering the medications, essentially to determine the safety of the medications to respondent's heart. Further, the court, recognizing the seriousness of the risk to respondent's heart, authorized the administration of the proposed medications with the "initial caveat" that "there be a consultation, if necessary, with the cardiologist, to determine the risk to [respondent's] heart." However, this information regarding the potential risk to respondent's heart was necessary before the court could engage in any meaningful review of the risks and benefits of the proposed treatment plan. Without this evidence of the extent of the potential harm, the State failed to prove that the benefits of the petitioned-for medications outweighed their harm. See Kness, 277 Ill. App. 3d at 720 (without testimony identifying the medication sought to be administered and an explanation as to the side effects of the medication, "there is no evidence from which the trial court could determine that the benefits outweighed the harm of the medication").

Furthermore, the trial court's comment, that it did "not intend to substitute [its] judgment for that of the physician's [sic]," reveals that the trial court improperly delegated its duty of assessing the risks and benefits of the medication to respondent's treating physicians. See In re Gwendolyn N., 326 Ill. App. 3d 427, 431 (2001) (trial court's intent to trust the treating psychiatrist's professional judgment in determining respondent's alternate treatment plan violated the Code's requirement that

the trial court balance the harm and benefits of treatment). It was the trial court's duty to make the necessary assessment of the risks and benefits based on the evidence before it, and, if the court believed it lacked all the necessary information to make that assessment, the proper course was to continue the matter to obtain such information (405 ILCS 5/2--107.1(a--5)(2) (West 2006)) or deny the State's petition outright. Accordingly, the trial court's order granting the petition for the involuntary admission of psychotropic medication is against the manifest weight of the evidence and must be reversed. A remand is not necessary, since the administration of the medication has been terminated according to the terms of the trial court's order. See In re Richard C., 329 Ill. App. 3d 1090, 1094 (2002).

Because we reverse on this basis the trial court's involuntary treatment order, we do not reach respondent's remaining arguments. See In re Atul R., 382 Ill. App. 3d 1164, 1170 (2008); John R., 339 Ill. App. 3d at 785.

The judgment of the circuit court of Du Page County is reversed.

Reversed.

ZENOFF, P.J., and O'MALLEY, J., concur.