No. 2-07-0610     Filed: 4-1-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re JONATHAN P., Alleged to be a Person Subject to Involuntary Treatment | ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | | No. 07--MH--32 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Jonathan P., Respondent-Appellant). | ) ) ) ) | Honorable James C. Hallock, Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Jonathan P., appealed from the trial court's order authorizing the involuntary administration of psychotropic medication to respondent for up to 90 days pursuant to section 2--107.1 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/2--107.1 (West 2006)). Although the order had expired, we found review of the case appropriate under the capable-of-repetition-yet-evading-review mootness exception, and we reversed the order. In re Jonathan P., 386 Ill. App. 3d 981 (2008). In the exercise of its supervisory authority, our supreme court has directed us to vacate our opinion and reconsider the matter in light of its decision in In re Alfred H.H., 233 Ill. 2d 345 (2009), to determine whether a different result is warranted. Having done so, we adhere to our prior determination that review of the case is appropriate under the capable-of-repetition-yet-evading-review mootness exception, and we reverse.

At the hearing on the involuntary treatment petition, Dr. Husain testified that she was respondent's psychiatrist at the Elgin Mental Health Center. Respondent had been diagnosed with

"bipolar one disorder, unspecified, with rapid cycling," a serious mental illness. Due to the illness, respondent suffered from grandiose delusions, his mood was volatile, and he exhibited poor judgment. Respondent had been hospitalized twice in the past. Respondent was previously ordered to take psychotropic medication and, as a result, his behavior improved, he was less disruptive, and he became fit to stand trial. When respondent discontinued the medication, his condition deteriorated.

In her petition for involuntary treatment, Husain requested to administer four primary psychotropic medications and two alternative medications. Specifically, Husain petitioned to administer ziprasidone, orally (80 to 160 milligrams per day), ziprasidone, intramuscularly (10 to 30 milligrams per day), clonazepam (2 to 4 milligrams per day), and valproic acid (1,000 to 2,000 milligrams per day). (Because the petition listed ziprasidone in pill form and in injectable form separately, we will treat oral ziprasidone and injectable ziprasidone as separate medications for purposes of this decision.) The petition also listed quetiapine (300 to 800 milligrams per day) and Prolixin (10 to 25 milligrams per day) as alternative medications if ziprasidone was not effective.

At the hearing, Husain testified that respondent was previously treated with Geodon and risperidone. (Our research reveals that Geodon is the brand name for ziprasidone.) Respondent benefited from these medications, but he complained of side effects from risperidone. Thus, Husain testified that she did not want to administer risperidone, but rather was seeking to administer 300 to 800 milligrams per day of Seroquel and 10 to 25 milligrams per day of Prolixin or fluphenazine. (Apparently, Seroquel is the brand name for quetiapine, although this was not made clear from the testimony; Seroquel and quetiapine are used interchangeably throughout.) The State then asked Husain: "The other two medications prior to this?" Husain responded: "[z]iprasidone, 80 to 60

milligrams orally and [r]isperidone, two to 16 milligrams per day orally." (Presumably, this refers to the dosages Husain administered previously to respondent, since Husain specifically testified that she was not seeking to administer risperidone, due to its side effects.) Husain testified inconsistently as to which were primary medications and which were alternative medications. Lastly, Husain testified that she was seeking authorization for blood testing to safely administer the medication.

On cross-examination, Husain testified for the first time that she was also petitioning for clonazepam, which initially she stated was the generic name for risperidone. She then clarified that they were two different medications. Clonazepam is an antianxiety medication. Husain also testified that risperidone was included on the first page of the petition, but she made clear that she was not seeking to administer risperidone, due to its side effects. Risperidone appears on page two of the petition, as a medication respondent had received in the past.

Husain gave evidence of what she deemed to be the appropriate maximum and minimum dosages of two medications, namely Seroquel and Prolixin. She did not testify about valproic acid, and she did not testify about the appropriate dosages of clonazepam and ziprasidone.

The trial court discussed the specific statutory factors necessary for the involuntary administration of psychotropic medication and found that the State proved the factors by clear and convincing evidence. The court further found that "the medication to be administered shall be as described by the doctor in her testimony and in the range of dosages described by the doctor in her testimony." The court also stated that the hospital staff "will be allowed to run blood tests to check the safe administration of the medication."

The trial court entered an order allowing Husain to administer the following medications to respondent for 90 days: "[z]iprasidone 80-160 milligrams po/day, [z]iprasidone 10milligrams-

30milligrams IM/day, [q]uetiapine 300-800 milligrams po/day, [f]luphenazine 10-25 milligrams po/ IM." The order left blank what testing and lab procedures were authorized.

Soon after, respondent noticed that the petition was missing the page that requested the testing deemed essential for the safe and effective administration of the psychotropic medications. Based on this defect in the petition, respondent made an oral motion to dismiss the petition. The trial court denied the motion to dismiss, granted the State leave to file an amended petition, and continued the matter for "consideration" of the amendment. The court stayed the involuntary treatment order and, on the order itself, the court crossed out the authorized medications.

On May 25, 2007, the trial court granted the State's motion to amend the petition, finding that "the pleadings now conform to the proof." On June 15, 2007, the court denied respondent's motion to dismiss and motion to reconsider. The court lifted the stay, ruling that the medication order would take effect immediately. Respondent filed a timely notice of appeal.

On appeal, respondent contends that the trial court's order authorizing the involuntary administration of psychotropic medication should be reversed because the treatment order is legally invalid and unsupported by the evidence. Before addressing the merits, we note that the issues are moot because the 90-day period covered by the trial court's order has expired. See In re Robert S., 213 Ill. 2d 30, 45 (2004). "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." In re J.T., 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. In re Barbara H., 183 Ill. 2d 482, 491 (1998). Reviewing courts, however,

recognize exceptions to the mootness doctrine, such as the public interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, and an exception for cases involving events of short duration that are capable of repetition, yet evading review. J.T., 221 Ill. 2d at 350.

We determine that this case falls within the capable-of-repetition exception. This exception has two requirements. "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation." Alfred H.H., 233 Ill. 2d at 358. "Second, there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " Alfred H.H., 233 Ill. 2d at 358, quoting Barbara H., 183 Ill. 2d at 491. "This means that the present action and a potential future action must have a substantial enough relation that the resolution of the issue in the present case would have some bearing on a similar issue presented in a future case involving the respondent." In re Val Q., 396 Ill. App. 3d 155, 160 (2009), citing Alfred H.H., 233 Ill. 2d at 360.

First, the challenged action was obviously too short to be fully litigated during the pendency of the order. See Alfred H.H., 233 Ill. 2d at 358. Second, the issues presented here, and any resolution thereof, would bear on a subsequent case involving respondent. In Alfred H.H., our supreme court found that the capable-of-repetition mootness exception did not apply in that involuntary commitment case, because the respondent challenged whether the specific facts that were established during the hearing were sufficient to prove that the respondent was a danger to himself or to others. Alfred H.H., 233 Ill. 2d at 360. Because the facts would necessarily be different in any future commitment hearing, the court found that the issues presented in the case before it would have

no bearing on similar sufficiency-of-the-evidence issues presented in subsequent cases. See <u>Alfred H.H.</u>, 233 Ill. 2d at 360; <u>Val Q.</u>, 396 Ill. App. 3d at 160-61.

This case, however, is distinguishable. First, respondent makes two arguments that challenge the interpretation of the statute by contending that the order violated the Code. See <u>Alfred H.H.</u>, 233 Ill. 2d at 360. Second, although respondent's remaining arguments contest the sufficiency of the evidence, he specifically argues that the treatment order improperly varied from the petition and that it authorized dosages that were stated in the petition but were not in the testimony. Unlike the issue in <u>Alfred H.H.</u>, it is reasonably likely that the resolution of these issues would affect future cases involving respondent, because respondent will likely again be subject to involuntary treatment and the court will likely again commit the same alleged errors. See <u>Val Q.</u>, 396 Ill. App. 3d at 161; <u>In re Robin C.</u>, 395 Ill. App. 3d 958, 963-64 (2009) (applying capable-of-repetition exception where the resolution of the respondent's statutory compliance issue would have some bearing on a subsequent case involving respondent). Review is, therefore, appropriate.

Turning to the merits, respondent first argues that the trial court's order violated the Code for failing to include the testing authorized to monitor administration of the medications and for crossing out the approved medications. Whether the order complied with the Code presents a question of law, which we review <u>de novo</u>. See <u>In re Leslie H.</u>, 369 Ill. App. 3d 854, 856 (2006).

Section 2--107.1(a--5)(6) of the Code, which dictates the content of involuntary treatment orders, states as follows:

"(6) An order issued under this subsection (a--5) shall designate the persons authorized to administer the authorized involuntary treatment under the standards and procedures of this subsection (a--5). Those persons shall have complete discretion not to

administer any treatment authorized under this Section. The order shall also specify the medications and the anticipated range of dosages that have been authorized ***." 405 ILCS 5/2--107.1(a--5)(6) (West 2006).

Section (a--5)(6) does not require that an order include the testing authorized to monitor administration of the medication (see In re Barry B., 295 Ill. App. 3d 1080, 1088 (1998)), although the "petition may include a request that that court authorize such testing and procedures as may be essential for the safe and effective administration of the authorized involuntary treatment sought to be administered" (emphasis added) (405 ILCS 5/2--107.1(a--5)(1) (West 2006)). Thus, the order entered here was not legally insufficient for failure to specify the precise tests to be administered. See Barry B., 295 Ill. App. 3d at 1088. We note, however, that the better practice would be to include in the order the tests to be administered to monitor medication levels. This would ensure that the provider of medical care has strict guidance for the treatment of a patient receiving psychotropic medication involuntarily. Barry B., 295 Ill. App. 3d at 1088.

The parties' cited authority is not on point, because the cited cases address the court's authority to order blood tests. See In re Jill R., 336 Ill. App. 3d 956, 964 (2003) (trial court had authority to order medical testing even though not requested in the petition for involuntary administration of psychotropic medication); In re Floyd, 274 Ill. App. 3d 855, 860 (1995) ("Respondent *** contends that the order authorizing the involuntary withdrawal of blood is void for want of statutory authority"). Here, the issue is whether, after the court authorized blood testing, it was reversible error to omit this information from the treatment order. We have determined that it was not.

Next, respondent argues that the order violated the statute because the authorized medications are crossed out. Respondent likens the crossing out of the approved medications to the failure to include this information in the first place. See In re Gwendolyn N., 326 Ill. App. 3d 427, 429 (2001) (noncompliance with the Code provision requiring the order to specify the approved medications and dosages mandated reversal). The cross-out on the treatment order is troublesome, as the crossing out of material would generally indicate a deletion or correction. See Geiser v. Geiser, 115 A.D.2d 373, 375, 495 N.Y.S.2d 401, 403 (1985) (where a paragraph is crossed out, it is to be read as the deliberate deletion of the paragraph). But, under the unique circumstances of this case, it appears that the cross-out was meant to indicate a stay of the order. The subsequent order lifted the stay and clarified that the treatment order was to take effect immediately. Thus, the treatment order was not legally insufficient on this basis.

Respondent's remaining two arguments raise issues regarding the sufficiency of the evidence. Respondent complains of Husain's failure to testify regarding all petitioned-for medications and failure to testify to the appropriate dosages for several medications. Whether there was sufficient evidence regarding the type of medications sought to be administered and their anticipated dosages goes to the issue of whether the State proved by clear and convincing evidence that the benefits of the treatment outweigh the harm. See 405 ILCS 5/2--107.1(a--5)(4)(D) (West 2006); see also In re A.W., 381 Ill. App. 3d 950, 958 (2008) (to prove by clear and convincing evidence that the benefits of the treatment outweigh the harm, the State must present evidence as to the anticipated range of dosages of the proposed psychotropic medication); In re Gail F., 365 Ill. App. 3d 439, 446 (2006) (where doctor failed to testify to all requested medications, evidence was insufficient to determine

whether the benefits of the treatment outweighed the harm). To these questions, we apply the manifest-weight-of-the-evidence standard. Gail F., 365 Ill. App. 3d at 446.

Here, Husain did not testify to the appropriate dosages for clonazepam and injectable ziprasidone.[1] Respondent appears to believe that Husain's testimony was adequate as to the appropriate dosage for oral ziprasidone, but we do not find that to be the case. While discussing the requested medications, the State asked Husain an ambiguous question: "The other two medications prior to this?" Husain responded: "[z]iprasidone, 80 to 60 milligrams orally and [r]isperidone, two to 16 milligrams per day orally." Because Husain testified that she previously administered ziprasidone and risperidone to respondent, and she stated numerous times that she was not seeking to administer risperidone, the above testimony logically refers to the dosages previously administered to respondent. In any event, Husain never testified to the appropriate dosage for injectable ziprasidone, although the court authorized 10 to 25 milligrams in injectable form. Because of these omissions, Husain's testimony did not support the treatment order. See A.W., 381 Ill. App. 3d at 958

---

[1] We note that the Code does not require that an involuntary-treatment petition or an involuntary-treatment order set forth proposed nonpsychotropic medications (A.W., 381 Ill. App. 3d at 959-60), but the petition identifies clonazepam and valproic acid as psychotropic medications and our research has revealed the same. See Davis v. Hubbard, 506 F. Supp. 915, 927 (N.D. Ohio 1980) ("The term psychotropic, or 'mood altering' drug describes several categories of major tranquilizers (also called antipsychotic or neuroleptic drugs), antianxiety drugs (minor tranquilizers), antidepressants, sedatives (e.g., barbiturates), and hypnotics").

(involuntary treatment order reversed because, <u>inter alia</u>, it authorized specific dosages of psychotropic medications that were not supported by evidence).

Last, Husain failed to offer any testimony regarding the petitioned-for valproic acid, and, although Husain testified regarding her request for clonazepam, the trial court failed to authorize it. Respondent notes this error but fails to develop an argument or cite sufficient supporting authority. However, our research has revealed the case of <u>Gail F.</u>, 365 Ill. App. 3d at 447, where this court concluded that the trial court cannot approve fewer than all the medications listed on the petition unless the treating physician is seeking authorization for fewer than all.

In <u>Gail F.</u>, the State petitioned for the administration of 12 medications. The treating psychiatrist offered testimony regarding only 10 of those medications. The court, however, authorized the administration of all 12 medications. On appeal, both parties agreed that this was error. The State, however, argued that the lack of evidence affected only the approval of the 2 medications and that the order could be modified to authorize the 10 medications that were supported by testimony. We rejected that argument. The lack of evidence on all petitioned-for medications was fatal to the entire petition. See <u>Gail F.</u>, 365 Ill. App. 3d at 447. We reasoned that a modification of the treatment plan embodied in the petition must be a matter of medical judgment, not legal:

> " 'As this court has recognized, *** the diagnosis and treatment of mental health disorders is a " 'highly specialized area of medicine which is better left to the experts.' " [Citation.] Indeed, section 2--107.1 vests the physician authorized to administer the involuntary treatment "complete discretion" <u>not</u> to administer the treatment. [Citation.] It is thus not for the trial court or the jury to "develop a course of treatment and then dictate that course to the

treating physician. That would constitute role reversal." [Citation.] In the words of amici curiae, allowing the layperson jury to determine which of the various medications should be involuntarily administered "dangerously approaches the practice of medicine." ' " (Emphasis in original.) Gail F., 365 Ill. App. 3d at 447, quoting In re Mary Ann P., 202 Ill. 2d 393, 406 (2002).

The Code does not permit the fact finder "to parse the recommended treatment and selectively authorize only certain requested medications." Mary Ann P., 202 Ill. 2d at 407. "[W]here *** the recommended treatment consists of multiple medications--some to be administered alternatively, some to be administered in combination, and some to be administered only as needed to counter side effects--it is only this treatment, in its entirety, that may be authorized." Mary Ann P., 202 Ill. 2d at 405-06.

While the rule in Mary Ann P. does not create an absolute bar on a court's approval of fewer than all of the medications listed in a petition, it requires that any variance from the petition be made at the behest of the treating physician. Gail F., 365 Ill. App. 3d at 447. However, "[w]e do not deem a simple failure to testify about a medication to suggest the treating physician's judgment, as failure to present evidence may reflect legal error rather than medical judgment." Gail F., 365 Ill. App. 3d at 447.

Here, the petition requested six psychotropic medications. Husain testified in regard to five medications. And the trial court's order ultimately approved four medications. Specifically, the order did not approve valproic acid, likely because Husain neglected to testify to it, and, despite her testimony regarding clonazepam, the order did not approve it. Because Husain did not request these variances from the petition, selective authorization by the court was improper. See Gail F., 365 Ill.

App. 3d at 447. Thus, the order must be reversed. See In re Richard C., 329 Ill. App. 3d 1090, 1094

(2002). A remand is not necessary, since the administration of the medications has been terminated

according to the terms of the court's order. See Richard C., 329 Ill. App. 3d at 1094.

For the foregoing reasons, we reverse the judgment of the circuit court of Kane County.

Reversed.

BOWMAN and BURKE, JJ., concur.