# Illinois Official Reports

## Appellate Court

---

### *In re Jennice L.*, 2021 IL App (1st) 200407

---

| | |
|---|---|
| Appellate Court Caption | *In re* JENNICE L., a Person Found Subject to Involuntary Medication (The People of the State of Illinois, Petitioner-Appellee, v. Jennice L., Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>No. 1-20-0407 |
| Filed | July 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2020-COMH-000083; the Hon. James R. Carroll, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Veronique Baker and Matthew R. Davison, of Illinois Guardianship and Advocacy Commission, of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent-appellant, Jennice L., appeals from the circuit court's order authorizing the involuntary administration of various psychotropic medications and other medical tests to her, pursuant to section 2-107.1(a-5) of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/2-107.1(a-5) (West 2020)). For the following reasons, we reverse.

¶ 2    We begin by laying out the two statutory sections that lie at the heart of this appeal. Section 2-107.1(a-5)(1) of the Mental Health Code provides that "[a]ny person 18 years of age or older, including any guardian, may petition the circuit court for an order authorizing the administration of psychotropic medication and electroconvulsive therapy to a recipient of services." *Id.* § 2-107.1(a-5)(1). However, the circumstances under which involuntary treatment may be administered are strictly limited by section 2-107.1(a-5)(4) of the Mental Health Code, which provides:

> "(4) Psychotropic medication and electroconvulsive therapy may be administered to the recipient if and only if it has been determined by clear and convincing evidence that all of the following factors are present. ***
>
> (A) That the recipient has a serious mental illness or developmental disability.
>
> (B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.
>
> (C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.
>
> (D) That the benefits of the treatment outweigh the harm.
>
> (E) That the recipient lacks the capacity to make a reasoned decision about the treatment.
>
> (F) That other less restrictive services have been explored and found inappropriate.
>
> (G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." *Id.* § 2-107.1(a-5)(4).

¶ 3    Pursuant to this statutory authority, a petition seeking to involuntarily administer various psychotropic medications and other medical tests to respondent was filed by Dr. Mercedes Martinez, a psychiatrist, on January 8, 2020. Therein, it was alleged that respondent, a 45-year-old female, suffered serious mental illness due to a chronic history of mental illness accompanied by multiple hospitalizations and prolonged inpatient and involuntary psychiatric treatment. Respondent allegedly suffered from mood lability, acute psychosis, and "bizarre" persecutory delusions. A guardian had been appointed for respondent, and she was transferred from Alton Mental Health Center to Chicago-Read Mental Health Center (Chicago-Read) on January 15, 2019.

¶ 4     More recently, respondent began to refuse to take her prescribed medications. This caused a deterioration in her mental health and led to several instances of combative behavior and self-harm. These included two instances in January 2020, in which respondent caused physical injuries to a staff member and another patient, and emergency medications and restraints had to be utilized upon respondent. Respondent's refusal to take her prescribed medications caused her suffering and led her to be an imminent risk of harm to herself and others. That refusal also caused her judgment to be so impaired that she could no longer make reasoned decisions about her treatment, and her family was not capable of providing the level of care she required.

¶ 5     The petition therefore sought authorization to involuntarily administer six primary psychotropic medications, or six alternative medications, to respondent for up to 90 days. The petition also sought authorization to perform several blood and urine tests, which were alleged to be essential for the safe and effective administration of the medications. The benefits of these interventions were alleged to outweigh any harm, as it would allow respondent to control her behavior and live in a less restrictive setting, and she had responded well to the requested medications in the past with only nominal side effects. A motion to amend the petition seeking to modify the requested medications and tests was granted on February 14, 2020, at the beginning of a hearing on the amended petition.

¶ 6     At the hearing, Martinez was found to be an expert in psychiatry and qualified to provide expert testimony. She then testified that she was respondent's current psychiatrist at Chicago-Read, where respondent had resided since January 15, 2019. In general, Martinez's testimony comported with the allegations contained in the amended petition while providing additional details and factual background.

¶ 7     Martinez also testified that in addition to her mental illness, respondent suffered from numerous physical ailments including chronic hypertension, chronic kidney disease, and a traumatic brain injury. Her last physical examination by a medical doctor occurred in January 2019. In addition, she specifically testified that some of the proposed medications might be used in combination and that it was "possible" that there were "new risks or side effects" that could result from such combinations. It was Martinez's belief that 90 days of involuntary treatment would stabilize respondent's condition so that she could improve her behavior and disposition and be permitted more freedom at Chicago-Read.

¶ 8     Respondent also testified at the hearing and provided information on her medical and mental health history, her various diagnoses, and the types of medications she had been prescribed in the past. She described unpleasant side effects from some of those medications and expressed her strong desire not to be involuntarily administered the proposed medications and tests.

¶ 9     At the conclusion of the hearing, the circuit court granted the amended petition. However, the court indicated concern that respondent had not had a physical examination in over a year and therefore concluded that no medications could be involuntarily administered pursuant to its order until respondent underwent a complete medical examination. The court also expressed disappointment with the lack of greater involvement by respondent's guardian before and during these proceedings and its hope that respondent's guardian would be more involved with respondent's mental health treatment in the future, to hopefully avoid the need for further petitions seeking the administration of involuntary treatment.

¶ 10    Respondent timely appealed. However, the State failed to file an appellee's brief, and on May 12, 2021, this court entered an order taking the appeal on the record and respondent's

brief only. Under the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976), we may address the merits of respondent's appeal.

¶ 11 Before continuing to the merits, however, we note that the underlying judgment was limited to not more than 90 days and has therefore expired by its own terms. Therefore, and as respondent herself acknowledges, we cannot grant her any effectual relief, and her appeal is moot. See *In re Robert S.*, 213 Ill. 2d 30, 45 (2004) (holding that after the 90-day period for the administration of involuntary treatment has passed, the reviewing court cannot grant any meaningful relief and, therefore, the case is moot and any decision would be advisory in nature). However, respondent argues we should reach the merits of her appeal based on both the public interest and the "capable of repetition yet avoiding review" exceptions to the mootness doctrine. Except for one of the challenges raised on appeal, we agree.

¶ 12 "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). As will be discussed below, some of respondent's arguments on appeal concern the circuit court's compliance with the requirements of the Mental Health Code, and courts have repeatedly found such matters qualify for review under the public interest exception to the mootness doctrine. *In re Robert S.*, 213 Ill. 2d at 46; *In re Maureen D.*, 2015 IL App (1st) 141517, ¶ 22; *In re Katarzyna G.*, 2013 IL App (2d) 120807, ¶ 9. We come to the same conclusion here.

¶ 13 The "capable of repetition yet avoiding review" exception has two elements. "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation. Second, there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *In re Alfred H.H.*, 233 Ill. 2d at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). Here, the first element has clearly been met because the circuit court's involuntary medication order lasted only 90 days, a time period too short to allow for full appellate review.

¶ 14 The second element also has been met here with all but one of respondent's claims. Respondent was prescribed psychotropic medications in the past, including on an emergency and involuntary basis. She is also likely to be prescribed these medications in the future due to the chronic nature of her mental illnesses. And, given respondent's repeated refusal to take prescribed medications in the past, she is likely to refuse such medications in the future. Thus, there is a reasonable expectation that respondent would again be subjected to involuntary treatment. We may therefore address most of respondent's appeal on the merits under this exception as well. See *In re Maureen D.*, 2015 IL App (1st) 141517, ¶ 24 (coming to the same conclusion under similar circumstances).

¶ 15 The only argument that does not qualify for an exception to the mootness doctrine is respondent's contention that the State failed to show she lacked capacity to make a reasoned decision about the proposed treatment, as is required by section 2-107.1(a-5)(4)(E) of the Mental Health Code (405 ILCS 5/2-107.1(a-5)(4)(E) (West 2020)). In making this argument, respondent simply challenges the sufficiency of the evidence establishing her lack of capacity at the time the underlying judgment was entered. Such a claim "does not qualify for the public interest exception." See *In re Torry G.*, 2014 IL App (1st) 130709, ¶ 28. Moreover, the underlying order has now expired, the issue is moot, and respondent's argument on this issue

raises no question that might apply to her in the future. Should respondent ever be subject to a future petition seeking involuntary treatment, the relevant question will be the sufficiency of the evidence of her incapacity *at that time*. Nothing we could say about such evidence presented below would be in any way relevant to any such future proceedings. See *In re Dawn H.*, 2012 IL App (2d) 111013, ¶ 14 (finding that a sufficiency claim concerning the specific evidence in an isolated case is not enough to satisfy the requirements for the "capable of repetition yet avoiding review" exception because the next case involving the same respondent might involve completely different evidence).

¶ 16    Turning to the merits of the remaining arguments raised in respondent's appeal, she initially asserts several instances in which the circuit court purportedly failed to comply with the requirements of section 2-107.1(a-5)(4) of the Mental Health Code. Because the administration of any involuntary mental health services to an unwilling patient entails a " 'massive curtailment of liberty' " (*In re Barbara H.*, 183 Ill. 2d at 496 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980))), "Illinois courts have required strict compliance with [the Mental Health] Code's procedural safeguards to insure that the mental health system does not become a tool to oppress rather than to serve society" (*In re Williams*, 305 Ill. App. 3d 506, 509 (1999)). "Noncompliance with statutory provisions of the [Mental Health Code] renders a judgment entered under such circumstances erroneous and of no effect." *In re Frances K.*, 322 Ill. App. 3d 203, 208 (2001). Whether the order complied with the Mental Health Code presents a question of law, which we review *de novo. In re Jonathan P.*, 399 Ill. App. 3d 396, 401 (2010).

¶ 17    We first consider respondent's assertion that the circuit court improperly failed to follow the analytical framework provided in section 2-107.1(a-5)(4) of the Mental Health Code (see *supra* ¶ 2) but rather reached its conclusions only after "adjudicating what would be in [respondent's] best interest." In support of this assertion, respondent cites several instances in the report of proceedings where—in discussing its ruling—the circuit court referenced the need to determine what would be in respondent's "best interest." She also cites *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1078 (2011), where the court held that "a best-interests finding is not what the [Mental Health Code] requires." Rather, because psychotropic medication "is invasive and includes possibly significant side effects, and because involuntary administration implicates important liberty interests, courts must exercise caution in entering such orders and require 'firm proof' of the necessary statutory elements." *Id.* at 1078-79 (quoting *In re David S.*, 386 Ill. App. 3d 878, 883-84 (2008)).

¶ 18    We acknowledge that the circuit court did refer to a concern for respondent's "best interest" on several occasions, and we fully agree with the proposition that it is the requirements of the Mental Health Code and not a "best interest" standard that should guide a court's analysis with respect to a petition to involuntarily administer psychotropic medication and treatment. However, orders of the circuit court must be interpreted from the entire context in which they were entered, with reference to other parts of the record including the pleadings, motions, and issues before the court and the arguments of counsel. *Dewan v. Ford Motor Co.*, 343 Ill. App. 3d 1062, 1069 (2003); *P&A Floor Co. v. Burch*, 289 Ill. App. 3d 81, 88 (1997). Orders must be construed in a reasonable manner to give effect to the apparent intention of the circuit court. *Dewan*, 343 Ill. App. 3d at 1069; *P&A Floor Co.*, 289 Ill. App. 3d at 88-89.

¶ 19    Here, it is apparent from the entire record that the circuit court's relatively isolated references to the respondent's "best interest" were nothing more than a shorthand for the analysis required by the Mental Health Code. The amended petition at issue below specifically

addressed the required statutory factors. Additionally, in both its oral pronouncement and in its written order, the circuit court evaluated each factor contained in section 2-107.1(a-5)(4) of the Mental Health Code and based its ultimate conclusion upon its findings with respect to each factor contained therein. As such, we reject respondent's contention that the circuit court failed to comply with the Mental Health Code on this basis.

¶ 20       Next, we consider the assertion that the circuit court failed to comply with section 2-107.1(a-5)(4)(F) of the Mental Health Code, which requires the circuit court to conclude that "other less restrictive services have been explored and found inappropriate." 405 ILCS 5/2-107.1(a-5)(4)(F) (West 2020). In support, respondent notes the circuit court's own disappointment with the lack of greater involvement by respondent's guardian, and respondent contends that this entire proceeding could have been avoided "if the petitioner had simply asked [respondent's] guardian to consent to such services in advance, including any medical examinations or screenings."

¶ 21       This argument misreads the provisions of the Mental Health Code. While a guardian may consent to the administration of psychotropic medication to a "non-objecting" recipient (*id.* § 2-107.1(c)), a "guardian may be authorized to consent to the administration of psychotropic medication or electroconvulsive therapy to an objecting recipient only under the standards and procedures of subsection (a-5)" (*id.* § 2-107.1(b)). Those are the very same standards and procedures before us. Because respondent continued to object to the treatment proposed by Martinez, her guardian was therefore not statutorily authorized to consent to that treatment without first going through the same proceedings at issue here. See *id.* As such, the circuit court did not fail to comply with section 2-107.1(a-5)(4)(D) of the Mental Health Code on this basis.

¶ 22       Next, respondent contends that the circuit court failed to comply with section 2-107.1(a-5)(4)(D) of the Mental Health Code, where in determining whether the benefits of the proposed treatment outweigh the harm it stated no less than three times that it would not "substitute its judgment" for that of Martinez. On this point, we agree with respondent.

¶ 23       In another case involving a petition filed under the Mental Health Code, the circuit court stated that it did " 'not intend to substitute [its] judgment for that of the physician's.' " *In re Val Q.*, 396 Ill. App. 3d 155, 163 (2009), *rev'd on other grounds by In re Rita P.*, 2014 IL 115798. The appellate court concluded that this comment revealed that the circuit court "improperly delegated its duty of assessing the risks and benefits of the medication to respondent's treating physicians." *Id.* As the court further noted, under the Mental Health Code it was the *circuit court's* "duty to make the necessary assessment of the risks and benefits based on the evidence before it." *Id.* We agree with this analysis.

¶ 24       As noted above, here the circuit court stated no less than three times that it would not "substitute its judgment" for that of Martinez. And just as in the *In re Val Q.* decision, the circuit court did so specifically in the context of assessing the risks and benefits of the proposed psychotropic medications. Ultimately, the circuit court concluded that "[b]ased on the testimony of Dr. Martinez, I find that the benefits of the treatment do outweigh the harm at this point. *** The Court cannot substitute its own judgment for what the medical doctor, the psychiatrist here, has indicated." Because all these comments reveal that the circuit court improperly delegated its duty to Martinez, we conclude that this failure to comply with section 2-107.1(a-5)(4)(D) of the Mental Health Code below renders the judgment entered below "erroneous and of no effect." See *In re Frances K.*, 322 Ill. App. 3d at 208.

¶ 25 Respondent raises two more arguments on appeal, claiming each also "asserts statutory noncompliance" with the Mental Health Code that "should be permitted *de novo* review." However, we conclude that these arguments in fact raise challenges to the required type and the sufficiency of the evidence, and we will therefore review them under that standard.[1]

¶ 26 Each factor in section 2-107.1(a-5)(4) of the Mental Health Code must be established by "clear and convincing evidence." 405 ILCS 5/2-107.1(a-5)(4) (West 2020). "Clear and convincing evidence is defined as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question." *In re Val Q.*, 396 Ill. App. 3d at 162. When reviewing the sufficiency of the evidence in a case involving the involuntary administration of psychotropic medication, we will not overturn the trial court's ruling unless it is against the manifest weight of the evidence. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 28. A ruling is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Louis S.*, 361 Ill. App. 3d 774, 779 (2005).

¶ 27 In the first remaining argument, respondent contends that the circuit court improperly granted the amended petition while also providing that no medications could be involuntarily administered pursuant thereto until a complete medical examination was performed. Respondent contends that the circuit court therefore failed to properly determine whether clear and convincing evidence established that the benefits of the proposed treatment outweighed the harm, pursuant to section 2-107.1(a-5)(4)(D) of the Mental Health Code. We agree, and once again turn to *In re Val Q.*, 396 Ill. App. 3d at 163.

¶ 28 There, the circuit court authorized the administration of the proposed psychotropic medications with the caveat that first " 'there be a consultation, if necessary, with the cardiologist, to determine the risk to [respondent's] heart.' " *Id.* The appellate court reversed, finding that

> "this information regarding the potential risk to respondent's heart was necessary *before* the court could engage in any meaningful review of the risks and benefits of the proposed treatment plan. Without this evidence of the extent of the potential harm, the State failed to prove that the benefits of the petitioned-for medications outweighed their harm." (Emphasis in original.) *Id.*

We come to the same conclusion here, where respondent had serious nonpsychiatric medical issues and without the results of the mandated medical examination it was manifestly erroneous for the circuit court to find clear and convincing evidence that the benefits of the psychotropic medication outweighed the harm.

¶ 29 Finally, we consider respondent's contention that because it had no expert testimony regarding risks associated with the combination of psychotropic medications being proposed, the circuit court once again failed to adequately consider whether the benefits of the proposed

---

[1]The reason we consider these two sufficiency challenges on the merits and not the one discussed *supra* ¶ 15 is that they raise challenges to not just to the sufficiency of the evidence but to the specific *type of evidence* that is required to establish the need for involuntary treatment by clear and convincing evidence. See *In re Dawn H.*, 2012 IL App (2d) 111013, ¶ 16 (finding otherwise moot questions regarding the type of evidence required by the Mental Health Code are "broader than one of simple sufficiency" and are amenable to review on the merits because a respondent might face the same issue in future proceedings).

- 7 -

treatment outweighed the harm, pursuant to section 2-107.1(a-5)(4)(D) of the Mental Health Code. We agree.

¶ 30 Illinois courts "have consistently construed the statute to require the State to present expert testimony describing both the expected benefits and the possible side effects of each medication requested in the petition." *In re H.P.*, 2019 IL App (5th) 150302, ¶ 33. "The rationale underlying these holdings is that courts are not able to meaningfully assess whether the benefits of treatment outweigh the risk of harm unless they are presented with evidence of both the benefits and the harms that might occur as a result of the proposed treatment." *Id.* Taking this requirement one step further, the Fifth District of the Illinois Appellate Court has concluded:

> "We believe that the possibility of harm resulting from drug interactions is a crucial consideration in determining whether the benefits of a proposed course of treatment outweigh the risk of harm. Without pertinent information on the possibility of such harm, courts do not have adequate information to make a meaningful determination. Thus, we now hold that the State must provide trial courts with expert testimony addressing known drug interactions in order to meet its statutory burden of proving that the benefits of the proposed treatment outweigh the harm." *Id.* ¶ 36

¶ 31 We agree that not only with respect to any individual proposed medication, a circuit court must be presented with expert testimony describing both the expected benefits and the possible side effects of the *combination* of any such medications requested in the petition, so as to allow the circuit court to determine if the State has met its statutory burden of proving that the benefits of the proposed treatment outweigh the harm. Applying this conclusion here, we note that Martinez specifically testified that some of the proposed medications might be used in combination and that it was "possible" that there were "new risks or side effects" that could result from such combinations. However, no testimony or other evidence was ever presented to the circuit court regarding any of those new risks or side effects. Without such evidence, it was impossible for the circuit court to adequately consider whether the benefits of the proposed treatment outweighed the harm, and the circuit court's affirmative conclusion that the proposed treatment outweighed the harm was therefore manifestly erroneous.

¶ 32 For the foregoing reasons, the circuit court's order granting the petition for the involuntary admission of psychotropic medication and other medical tests must be reversed. A remand is not necessary since the administration of the medication has been terminated according to the terms of the circuit court's order.

¶ 33 Reversed.