# Illinois Official Reports

## Appellate Court

*Hana v. Illinois State Medical Inter-Insurance Exchange Mutual Insurance Co.*,
2018 IL App (1st) 162166

| | |
|---|---|
| Appellate Court Caption | ALIZABETH HANA and ELVIN HANA, Plaintiffs-Appellees, v. ILLINOIS STATE MEDICAL INTER-INSURANCE EXCHANGE MUTUAL INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-16-2166 |
| Filed | March 16, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-5975; the Hon. Irwin Solganick, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Stamos & Trucco, LLP, of Chicago (James J. Stamos and Benjamin F. Klimek, of counsel), and Law Offices of Michael T. Reagan, of Ottawa (Michael T. Reagan, of counsel), for appellant.<br><br>Law Offices of Michael W. Rathsack, of Chicago (Michael W. Rathsack, Elizabeth A. Kaveny, and Michael L. Gallagher, of counsel), for appellees. |

| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.[*]
Presiding Justice Reyes and Justice Hall concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Alizabeth Hana and Elvin Hana, filed this suit against defendant, Illinois State Medical Inter-Insurance Exchange Mutual Insurance Company (ISMIE), seeking to recover for ISMIE's alleged bad-faith failure to settle an underlying lawsuit. A jury ruled in favor of plaintiffs, entered a multimillion dollar verdict against ISMIE, and ISMIE thereafter appealed raising a host of issues. For the following reasons, we reverse and remand for a new trial.

¶ 2    I. BACKGROUND

¶ 3    Because of the limited number of issues we address in this opinion, we recite here only those facts necessary to our resolution of this appeal.

¶ 4    A. Underlying Medical Malpractice Litigation

¶ 5    The underlying medical malpractice suit (Hana v. Chams, No. 05-L-7692 (Cir. Ct. Cook County, Nov. 10, 2015)) was brought by plaintiffs against, *inter alia*, ISMIE's insureds, Dr. Albert Chams and Dr. Joyce Chams—as well as their joint-obstetrics practice group, Chams Women's Health Care, S.C.—in addition to Rush North Shore Medical Center (Rush North Shore) and two of Rush North Shore's emergency room doctors. The underlying suit sought to recover for deficient prenatal care provided by the defendants, which resulted in physical injury to Alizabeth and the death of plaintiffs' child, Mary. Alizabeth was appointed as the special administrator of Mary's estate, and a wrongful death claim was included in the complaint. ISMIE accepted defense of the underlying suit without reservation and retained an attorney to represent the Chamses.

¶ 6    Prior to trial, a number of the defendants were either dismissed from the case or were awarded summary judgment in their favor, and three of the defendants settled with plaintiffs. Specifically, the trial court approved a $1.5 million settlement among plaintiffs, Rush North Shore, and two of Rush North Shore's emergency room doctors. These three defendants were then dismissed from the underlying suit. As a part of this settlement, payments were made to plaintiffs' health insurers to settle any liens they might have on plaintiffs' recovery in the underlying case. This matter thereafter proceeded to a jury trial in May of 2009, involving only plaintiffs' claims against Dr. A. Chams, Dr. J. Chams, and Chams Women's Health Care, S.C.

¶ 7    Following the trial, the jury returned a general verdict in favor of plaintiffs and against the three remaining defendants. The jury awarded a total of $6,171,118.67 in damages, which included (1) $621,118.67 for Alizabeth's personal injuries, (2) $4.55 million for Mary's survival claim, and (3) $1 million for the wrongful death claim. Pursuant to a posttrial motion, the trial court reduced this amount by $1.5 million to account for the pretrial settlement. The

---

[*]Justice Rochford has listened to the recording of the oral argument.

defendants' subsequent posttrial motion for a new trial was denied, and on appeal we affirmed. *Hana v. Chams*, 2011 IL App (1st) 100146-U.

¶ 8 After ISMIE paid its policy limits on the underlying verdict, the Chamses were personally responsible for the $1.35 million balance. In exchange for a covenant not to enforce that excess judgment against the Chamses, plaintiffs were assigned whatever rights the Chamses might have with respect to a bad-faith claim for ISMIE's failure to settle the underlying litigation within the policy limits.

¶ 9                                                    B. Bad Faith Lawsuit

¶ 10 Plaintiffs, thereafter, filed this suit seeking both, $1.35 million in compensatory damages for ISMIE's bad-faith refusal to settle in count I, and $10 million in punitive damages for ISMIE's allegedly willful and wanton breach of fiduciary duty in count II. In count II, plaintiffs also sought an award of costs, attorney fees, and penalties pursuant to section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2016). Plaintiffs also filed a jury demand. Pursuant to Public Act 98-1132 (eff. June 1, 2015), which amended section 2-1105(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1105(b) (West 2016)) to provide for six-person juries in civil cases, and over the objection of ISMIE, this matter was tried before a six-person jury.

¶ 11 That jury ultimately found in favor of plaintiffs on both counts, awarding plaintiffs $1.35 million in compensatory damages and $13 million in punitive damages. In addition, the trial court awarded plaintiffs over $1.5 million in costs, attorney fees, interest, and penalties. ISMIE timely appealed.

¶ 12                                                    II. ANALYSIS

¶ 13 ISMIE raises a constitutional issue as to the size of the jury in this case, as well as a number of other issues on appeal. However, because we conclude that this matter must be remanded for a new trial due to the denial of ISMIE's constitutional right to a 12-person jury, and because we find that issue to be dispositive, we need only address that issue. Nevertheless, we will also address three issues related to the admissibility of evidence and the appropriateness of jury instructions that are likely to recur upon remand.

¶ 14 Thus, we begin by considering ISMIE's argument that the trial court improperly rejected its contention that it was entitled to a new trial because of the denial of its constitutional right to a 12-person jury.

¶ 15 In considering whether a motion for a new trial should be granted, the trial court should set aside a jury's verdict only if it is contrary to the manifest weight of the evidence or a party has been denied a fair trial. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). The trial court is in a superior position to consider errors that occurred, the fairness of the trial to all parties, and whether substantial justice was accomplished. *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 932-33 (1994). A trial court's ruling on a motion for new trial will not be reversed unless there is an affirmative showing that it clearly abused its discretion. *Gustafson*, 151 Ill. 2d at 455.

¶ 16 As noted above, Public Act 98-1132 (eff. June 1, 2015) amended section 2-1105(b) of the Code (735 ILCS 5/2-1105(b) (West 2016)) to provide for 6-person juries in civil cases and to eliminate the ability of either party to request a jury of 12. It was pursuant to the amended version of section 2-1105(b) that this matter was tried before a 6-person jury.

¶ 17 However, in *Kakos v. Butler*, 2016 IL 120377, ¶ 28, our supreme court found that "[b]ecause the size of the jury—12 people—was an essential element of the right of trial by jury enjoyed at the time the 1970 Constitution was drafted, *** jury size is an element of the right that has been preserved and protected in the constitution." Our supreme court therefore found the portion of Public Act 98-1132 amending section 2-1105(b) and reducing the size of a jury in civil trials to be facially unconstitutional under the Illinois Constitution and therefore void *ab initio*. *Id.* ¶ 29.

¶ 18 Thus, because ISMIE was denied its constitutional right to a 12-person jury, it is apparent that it was denied a fair trial. This matter must therefore be remanded for a new trial. *Gustafson*, 151 Ill. 2d at 454. In reaching this conclusion, we reject three specific arguments raised by plaintiffs on appeal.

¶ 19 First, plaintiffs contend that ISMIE failed to preserve this issue for appeal by failing to obtain a ruling from the trial court on its objection to seating a 6-person jury. However, the record clearly reflects that ISMIE filed a pretrial written motion, asking the trial court to declare Public Act 98-1132 unconstitutional and to seat a 12-person jury. Moreover, and contrary to plaintiffs' assertions on appeal, the record reflects that this motion was discussed on the record and specifically denied by the trial court. This issue was thereafter included in ISMIE's posttrial motion. Therefore, we find that ISMIE properly preserved this issue for appeal.

¶ 20 Second, plaintiffs argue that ISMIE is not entitled to a new trial because no prejudice can be established where "it is pure speculation to say the verdict would have been different if there had been more jurors." However, as noted above, our supreme court concluded that the portion of Public Act 98-1132 amending section 2-1105(b) and reducing the size of a jury in civil trials was "facially unconstitutional and void *ab initio*." *Kakos*, 2016 IL 120377, ¶ 29. Thus, "the statute was constitutionally infirm from the moment of its enactment and is, therefore, unenforceable. As a consequence, we will give no effect to the unconstitutional statute." *People v. Blair*, 2013 IL 114122, ¶ 30. Our supreme court's decision in *Kakos* with respect to the amended version of section 2-1105(b) thus "stands as an impediment to the operation and enforcement of the statute." *Id.* Therefore, the trial court had no authority to try this matter before a six-person jury, nor did it have any authority to enter a judgment upon the verdict reached by such a jury. The verdict and judgment simply have no legal effect, and may not now be affirmed on direct appeal. See *Heastie v. Roberts*, 226 Ill. 2d 515, 535 (2007) (decisions of our supreme court apply retroactively to causes pending at the time they are announced, including cases on direct review in the appellate court).

¶ 21 Third, plaintiffs argue that ISMIE waived this issue by failing to strictly comply with Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006), pursuant to which a litigant challenging the constitutionality of a statute, ordinance, or administrative regulation must serve notice of the challenge—describing the nature of the constitutional challenge—upon the attorney general or other affected agency or officer, with such notice occurring at the time of suit, answer or counterclaim, if constitutionality is raised at that level, or promptly after the constitutional question arises as a result of a circuit or reviewing court ruling or judgment. The purpose of the notice is to give the affected agency or officer the opportunity to intervene in the proceeding for the purpose of defending the constitutionality of the statute, ordinance, or administrative regulation. *Id.*

¶ 22    As an initial matter, it is arguable that Rule 19 has no applicability here. In this appeal, we are not ourselves considering the constitutionality of Public Act 98-1132's amendment of section 2-1105(b). Rather, we are simply applying our supreme court's ruling in *Kakos* to this case. The constitutional issue has already been definitively determined.

¶ 23    Even if Rule 19 is applicable, we do not find it to be an impediment. It is true, ISMIE did not provide notice to the Attorney General prior to trial at the time it initially challenged the constitutionality of Public Act 98-1132's amendment of section 2-1105(b). Indeed, it was not until plaintiffs raised the failure to comply with Rule 19 in response to ISMIE's posttrial motion that ISMIE provided the required notice. At that time, ISMIE was informed that the Attorney General would not seek to intervene, the same decision it had reached in "hundreds" of other cases raising the same issue.

¶ 24    As our supreme court has recognized, "a party's failure to timely comply with Rule 19 does not deprive the court of jurisdiction to consider the constitutional issue. However, failure to strictly comply with the rule may result in waiver. Nevertheless, because waiver is a limitation on the parties, not on the court [citation], a circuit court or the appellate court has the discretion to permit late compliance with Rule 19 and thereafter to address the constitutional issue if the purpose of the rule has been served." *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 118-19 (2004).

¶ 25    In light of the fact that the Attorney General was ultimately notified by ISMIE, that the Attorney General declined to intervene just as it had in other cases, and given that our supreme court has now definitively ruled on the validity of Public Act 98-1132's amendment of section 2-1105(b), rendering any possible defense of the amendment futile, we conclude that the purpose of Rule 19 has been served. As such, any possible failure to strictly comply with Rule 19 is not an impediment to our consideration of ISMIE's argument that its constitutional right to a 12-person jury was violated.

¶ 26    Having determined that ISMIE is entitled to a new trial on this basis, all of the remaining arguments it raised on appeal in support of a new trial are now moot and need not be addressed. *In re Jonathan P.*, 399 Ill. App. 3d 396, 400 (2010) ("Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided."). As such, we generally decline to address those remaining issues. Indeed, a number of the additional arguments raised by ISMIE on appeal address issues specifically related to the award of damages, costs, attorney fees, and penalties. "Whether the additional issues will ever become relevant is therefore a matter of speculation. Should they become germane, 'the parties are free to raise [them] with the benefit of the additional facts and evidence that will be adduced at the proceedings held on remand.' [Citation.] For now, however, any discussion of the issues is premature." *Pielet v. Pielet*, 2012 IL 112064, ¶ 57; see also *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 463 (2003). Again, we will therefore not address such issues here.

¶ 27    Nevertheless, a reviewing court may address issues that are likely to recur on remand in order to provide guidance to the lower court and thereby expedite the ultimate termination of the litigation. *Pielet*, 2012 IL 112064, ¶ 56. A number of the other arguments raised by ISMIE

on appeal relate to the admissibility of evidence and the appropriateness of jury instructions that fall into this category, and we therefore choose to address those issues here.[1]

¶ 28     First, we consider ISMIE's contention that plaintiffs were improperly allowed to introduce into evidence a 2013 letter from its counsel to ISMIE, offering to settle this lawsuit for the $1.35 million excess verdict entered in the underlying case, as well as additional testimony regarding this letter. In response, plaintiffs contend that this evidence was properly entered to establish ISMIE's bad faith and willful and wanton conduct as to the underlying claims, which plaintiffs assert continued well after the excess verdict was entered in the underlying case.

¶ 29     In Illinois, evidence regarding settlement negotiations or offers to settle are generally not admissible. *Ford v. Grizzle*, 398 Ill. App. 3d 639, 649 (2010). Such evidence is discouraged because it might be construed as an admission of liability and because public policy favors compromise. *Morgan v. Richardson*, 343 Ill. App. 3d 733, 740 (2003). However, when settlement offers are relevant, they are admissible. *Shimkus v. Board of Review of the Illinois Department of Labor*, 117 Ill. App. 3d 826, 831 n.2 (1983). Illinois Rule of Evidence 408 provides that while evidence of settlement offers and negotiations are generally inadmissible, such evidence may be admitted for "permissible purposes," one of which is "establishing bad faith." Ill. R. Evid. 408 (eff. Jan. 1, 2011).

¶ 30     As an initial matter, we agree with ISMIE that any evidence of the 2013 settlement offer was barred by Rule 408. While Rule 408 does allow the introduction of evidence of settlement offers and negotiations to establish bad faith, we do not believe that this exception includes the introduction of evidence with respect to the settlement of the *present litigation* so as to establish ISMIE's bad faith with respect to its handling of the *underlying case*. While no Illinois case has addressed this specific issue, we note that Rule 408 "mirrors the Federal Rule 408, which our state courts have been applying to cases for years." *County of Cook v. Illinois Labor Relations Board, Local Panel*, 2012 IL App (1st) 111514, ¶ 35. At least one federal court has recognized that evidence of an insurer's refusal to settle a bad faith case is inadmissible for the purpose of establishing the insurer's bad faith in handling an underlying matter. *Niver v. Travelers Indemnity Co. of Illinois*, 433 F. Supp. 2d 968, 994 (N.D. Iowa 2006). This is consistent with the underlying policy of Rule 408; *i.e.*, promoting settlement.

¶ 31     Even if this evidence was not specifically barred by Rule 408, we agree with ISMIE that it is irrelevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan.1, 2011). "Evidence which is not relevant is not admissible." Ill. R. Evid. 402 (eff. Jan. 1, 2011).

¶ 32     In this case, the pleadings, evidence, arguments, and jury instructions all reflect that the ultimate issue was whether ISMIE's bad faith and willful and wanton conduct caused the excess judgment to be entered against the Chamses in the underlying case. The underlying judgment was entered in May 2009, and our prior decision affirming that judgment was entered in August 2011. The Chamses assigned their bad-faith claim to plaintiffs in March 2010, in exchange for a covenant not to enforce any excess judgment against the Chamses. In

---

[1]One of the issues raised on appeal by ISMIE involves the appropriateness of a jury instruction regarding a provision of the Rights of Married Persons Act. 750 ILCS 65/15 (West 2016). As framed by the parties, however, the propriety of this instruction is dependent on the evidence produced at trial. We therefore decline to address this issue at this time.

light of these facts, we fail to see how any refusal of ISMIE to settle this lawsuit in 2013 has any relevance with respect to whether ISMIE engaged in bad faith and willful and wanton conduct leading to the 2009 excess judgment. Even if we accepted plaintiffs' insistence that this evidence shows continuing willful and wanton conduct occurring after the 2009 excess judgment, we reject any contention that such evidence is in any way relevant to establishing that plaintiffs were therefore damaged by the 2009 judgment. Therefore, no evidence regarding the 2013 settlement letter should be admitted at trial upon remand.

¶ 33    Next, we consider ISMIE's contention that the trial court improperly provided the jury with Illinois Pattern Jury Instructions, Civil, Nos. 710.02, 710.03 (2011) (hereinafter IPI Civil Nos. 710.02, 710.03), and refused to provide ISMIE's proposed modified instructions, because those instructions did not accurately reflect current law.

¶ 34    Both IPI Civil No. 710.02, the pattern issues instruction for bad-faith claims against insurers, and IPI Civil No. 710.03, the pattern burden of proof instruction with respect to such claims, provide that a plaintiff must generally establish that the insurer had a "reasonable opportunity" to settle the underlying lawsuit against its insured within the policy limits.[2] Neither instruction has been amended in decades, and each instruction relies upon an understanding that the "Illinois Supreme Court has yet to define the duty or the elements of this cause of action." Illinois Pattern Jury Instructions, Civil, 710.00 Intro. (2011).

¶ 35    However, this does not reflect the current state of Illinois law. With respect to a bad-faith claim against an insurer for failure to settle a lawsuit against an insured, our supreme court has now specifically ruled:

> "The duty does not arise at the time the parties enter into the insurance contract, nor does it depend on whether or not a lawsuit has been filed. The duty of an insurance provider to settle arises when a claim has been made against the insured and there is a *reasonable probability* of recovery in excess of policy limits and a *reasonable probability* of a finding of liability against the insured. Since Illinois law generally does not require an insurance provider to initiate settlement negotiations [citations], this duty also does not arise until a third party demands settlement within policy limits." (Emphases added.) *Haddick ex rel. Griffith v. Valor Insurance*, 198 Ill. 2d 409, 417 (2001).

In examining this ruling, this court has explained that the "reasonable probability" requirement set out in *Haddick* essentially means that a plaintiff in a bad faith suit must establish that liability in excess of the policy limits in the underlying suit was "at least more likely than not, but not necessarily a certainty. " *Powell v. American Service Insurance Co.*, 2014 IL App (1st) 123643, ¶ 36.

¶ 36    "The function of jury instructions is to convey to the jury the correct principles of law applicable to the submitted evidence and, as a result, jury instructions must state the law fairly ***." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 507 (2002). Pattern instructions are

---

[2]In relevant part, IPI Civil No. 710.02 provides: "[The plaintiff claims that [name of insurance company] had a reasonable opportunity to settle [name of injured person]'s claim against [name of insured] within the policy limits.]" In relevant part, IPI Civil No. 710.03 provides: "The plaintiff has the burden of proving all of the following propositions: [First, that [name of insurance company] had a reasonable opportunity to settle [name of injured person]'s claim against [name of insured] within the policy limits.]"

presumed to be accurate statements of Illinois law, and the jury is to be instructed using an approved pattern instruction if the trial court determines that it is applicable to the circumstances of the case. *Luye v. Schopper*, 348 Ill. App. 3d 767, 773 (2004). Nevertheless, pattern instructions are not themselves law, and our supreme court has held that they "are not exempt from challenge." *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 385 (1982). There has not been any advance approval of IPI instructions by our supreme court, and "[a]n instruction is approved or rejected only after it has been judicially questioned and considered." *Id.*

¶ 37    Here, neither IPI Civil No. 710.02 nor IPI Civil No. 710.03 fairly and accurately reflects the current state of the law. A trial court may give nonpattern jury instructions when the pattern jury instruction on point does not adequately state the law. *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 177-78 (1997). While we do not mandate the exact form thereof at this time, upon remand, nonpattern jury instructions should be crafted to be used in the place of IPI Civil No. 710.02 and IPI Civil No. 710.03. Those instructions must reflect the holdings in *Haddick* and *Powell*.

¶ 38    Next, we address ISMIE's contention that the trial court improperly provided the following jury instruction proffered by plaintiffs:

> "If you decide for the plaintiff on the question of liability, you must then award the amount of money which will compensate the plaintiff for the damages proved by the evidence to have resulted from ISMIE's bad faith. The plaintiff's damages are $6,171,118.67 which is the amount of the judgment entered in favor of the plaintiff and against insured, minus $3,321,118.67, and minus $1,500,000.00 for other allowable offsets. This amount equals $1,350,000.00"

¶ 39    This instruction was based upon Illinois Pattern Jury Instructions, Civil, No. 710.07 (2011) (hereinafter IPI Civil No. 710.07), which provides:

> "If you decide for the plaintiff on the question of liability, you must then award the amount of money which will compensate the plaintiff for the damages proved by the evidence to have resulted from [name of insurance company]'s negligence or bad faith. The plaintiff's damages are $[insert sum] [which is the amount of the judgment entered in favor of the plaintiff and against [name of insured] (minus the amount received by the plaintiff from [name of insurance company] under the policy) (and) (minus the amount received by the plaintiff from another insurance company) (and) (minus [describe any other allowable offset(s)])]."

¶ 40    The "Notes on Use" commentary with respect to this instruction provides:

> "In most cases, there will be no dispute as to the dollar amount of the damages to which the plaintiff is entitled if the insurance company is found liable, and this instruction has been drafted accordingly. This instruction also assumes that any additional damages to which the plaintiff may be entitled (such as interest) can be added to the verdict by the court and included in the judgment.
>
> ***
>
> Whether the jury should be instructed as to how the sum claimed by the plaintiff was calculated is a matter left to the discretion of the court and counsel, and therefore the last part of this instruction is bracketed." *Id.*

¶ 41 Here, should ISMIE be found liable, the amount of plaintiffs' damages was undisputed: $1.35 million. Moreover, there was no dispute among the parties or the trial court that IPI Civil No. 710.07 generally provided the relevant pattern instruction in this instance. Once a trial court determines an instruction is to be given, then Illinois Supreme Court Rule 239(a) (eff. Jan. 1, 1999) creates a presumption that one of the pattern instructions will be used. As such, while the trial court had the discretion as to whether to include the final bracketed material, IPI Civil No. 710.07, tailored only to include the relevant facts of this case, should have been given. However, that is not what occurred here, where the jury instruction actually provided to the jury both altered the language of the pattern instruction and added a third sentence.

¶ 42 The plain language of the pattern instruction and the notes on use commentary make it clear that in this case only one *numerical* value should have been included in the second sentence of this jury instruction: *i.e.*, $1.35 million, the undisputed amount of plaintiffs' damages caused by ISMIE's bad faith. Thereafter, in the discretion of the trial court, the instruction could have also included a *verbal* description of how that figure was calculated. There should have been no third sentence.

¶ 43 Therefore, once the trial court elected to provide such a description as to how the amount of damages was calculated, the second sentence of the instruction in this case should have taken the following general form: "The plaintiffs' damages are $1,350,000.00 which is the amount of the judgment entered in favor of the plaintiff and against the Chamses minus the amount received by the plaintiffs from ISMIE under the policy and minus the amount of the pretrial settlement in the underlying case." At most, the language of IPI Civil No. 710.07 and the notes on use commentary for this instruction would arguably have supported a second sentence of the instruction in the following general form: "The plaintiffs' damages are $1,350,000.00, which is the amount of the judgment entered in favor of the plaintiffs and against the Chamses ($6,171,118.67) minus the amount received by the plaintiffs from ISMIE under the policy ($3,321,118.67) and minus the amount of the pretrial settlement in the underlying case ($1,500,000.00)."

¶ 44 Thus, while on remand the trial court will retain the discretion to omit or include the bracketed material contained in IPI Civil No. 710.07, should the bracketed portion of this instruction be used, it should be phrased in the general form described above, in accord with the language of the pattern instruction and the commentary. There should be no third sentence.

¶ 45 Finally, we note that, in addition to seeking a new trial on appeal, ISMIE also appeals from the denial of its posttrial request for judgment *n.o.v.* Obviously, should we consider this issue and rule in ISMIE's favor, it would be entitled not to a new trial, but to a judgment in its favor.

¶ 46 However, we are reluctant to address this issue in light of our conclusion that this matter was improperly tried before a 6-person jury in violation of ISMIE's constitutional right to a 12-person jury and pursuant to a statutory amendment that was void *ab initio*. Arguably, the entire proceedings were rendered void as a result of this fundamental error, and we are in no position to allow a judgment of any kind—even one in ISMIE's favor—to result from those proceedings. Furthermore, we have similar misgivings about entering any judgment when all of the evidence and arguments presented in this case were specifically tailored directly to a particular 6-person jury selected from the venire in an unconstitutional manner. There are specific indications in the record that the evidence and arguments presented below were in fact targeted at the particular jurors seated in this case.

¶ 47    Putting aside our reluctance and the fact that this case will be remanded for a new trial, even if we did address this issue, we would not find that the trial court erred in refusing to enter judgment *n.o.v.* in ISMIE's favor.

¶ 48    Judgment *n.o.v.* should be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). The trial court may not enter a judgment *n.o.v.* if the evidence demonstrates a substantial factual dispute, or where the assessment of witness credibility or the determination regarding conflicting evidence is decisive to the outcome. *Gustafson*, 151 Ill. 2d at 454; *Vanderhoof v. Berk*, 2015 IL App (1st) 132927, ¶ 59. Furthermore, "[i]n making this assessment, a reviewing court must not substitute its judgment for the jury's, nor may a reviewing court reweigh the evidence or determine the credibility of the witnesses." *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 89 (2002). A motion for judgment *n.o.v.* presents a question of law that we review *de novo*. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37.

¶ 49    Without going into any great detail, the record clearly reflects that—*at a minimum*—the parties presented materially conflicting evidence regarding the nature and sufficiency of the communications between ISMIE and the Chamses both before and during the underlying trial. The parties also presented conflicting testimony regarding the Chamses' demand to settle the underlying case and/or the possibility of entering into a "high/low" agreement with plaintiffs, either of which would have protected the Chamses from an excess verdict. The credibility of a number of witnesses was also clearly placed at issue at trial, with a determination as to the credibility of the testimony of those witnesses clearly being central to the resolution of the issues presented in this case.

¶ 50    In determining the propriety of a motion for judgment *n.o.v.*, it is not our place to reweigh this evidence or determine the credibility of the witnesses. As such, and because the evidence does not so overwhelmingly favor ISMIE such that no contrary verdict based on that evidence could ever stand (*Pedrick*, 37 Ill. 2d at 510), we would reject ISMIE's contention that its motion for judgment *n.o.v.* was improperly denied. We make this determination with respect to both ISMIE's bad-faith refusal to settle, as alleged in count I, and ISMIE's willful and wanton breach of fiduciary duty, as alleged in count II.

¶ 51                                    III. CONCLUSION

¶ 52    For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for a new trial consistent with this opinion.

¶ 53    Reversed and remanded.