2021 IL App (1st) 200838-U

No. 1-20-0838

Order filed November 12, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CROWN SERIES, LLC, 168 N. MICHIGAN SERIES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2017 L 4629 |
| | ) | |
| DANIEL P. COFFEY & ASSOCIATES, LTD., | ) | Honorable |
| | ) | Thomas R. Mulroy, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Daniel Pierce and Justice Sheldon Harris concurred in the judgment

**ORDER**

¶ 1     *Held*:   We affirm where: (1) the trial court did not err in admitting evidence of profits at trial for breach of contract; (2) defense counsel's statements regarding profits during closing arguments did not constitute error; and (3) the trial court did not err in denying plaintiff's motion for a new trial.

¶ 2     Plaintiff Crown Series LLC, 168 N. Michigan Series' (Crown) sued defendant Daniel P.

Coffey & Associates, Ltd. (Coffey Associates) for breach of contract. Following a jury trial, the

trial court entered judgment in favor of defendant Coffey Associates.  On appeal Crown contends

that: (1) the trial court erred when it allowed profits to be introduced into evidence; (2) the trial court erred when it allowed Coffey Associates to continuously make improper comments regarding said profits; and (3) the trial court erred when it denied Crown's motion for a new trial because the evidence at trial demonstrated that Coffey Associates breached the contract. For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4                                  A. Pretrial

¶ 5      At the time of pretrial, Crown was an Illinois limited liability company that owned a 12-story office building located at 168 North Michigan Avenue, Chicago, Illinois (subject property). Musa Tadros, a member of Crown LLC[1], was the primary contact for the subject property. Coffey Associates, an Illinois corporation, assigned architects Daniel P. Coffey (Coffey) and Fred Romano to work on the subject property. On April 30, 2013, the parties entered into an American Institute of Architects (AIA) contract whereby Coffey Associates would provide architectural services for the design and construction of the subject property for use as a hotel.

¶ 6      On December 31, 2013, the city of Chicago's department of buildings (city) denied Crown's permit application because the attached design, plans, and drawings (plans) did not demonstrate that the south-facing rooms would be guaranteed to receive natural light as required by the Municipal Code of Chicago (Chicago Municipal Code §13-172- 060(a) (added April 29, 1998))[2]. The plans showed that the subject building was adjacent to the property line of the adjoining property located at 150 South Michigan Avenue (adjoining property).   The city

---

[1] Although LLC's typically consist of multiple members, plaintiff's brief does not include who those members are.
[2] Chicago Municipal Code §13-172- 060(a)(added April 29, 1998), was repealed on August 1, 2019.

expressed concern that without an easement, the owner of adjoining property could construct a building that would ultimately obstruct the light in the south facing rooms.

¶ 7    On November 1, 2017, Crown filed the within complaint against Coffey alleging breach of contract and indemnification. In support of its breach of contract claim, Crown alleged that it would not have entered into other contracts for the hotel if Coffey Associates had notified them about the natural light requirement, and by failing to do so, Crown accrued damages in excess of $2 million for those respective contracts and agreements. Crown claimed that it decided to sell the subject property because of the financial drain the project was experiencing. Crown also sought indemnification pursuant to §8.1.3 of the AIA contract which provided that Coffey Associates was to indemnify Crown for acts of negligence or omissions that resulted in litigation against Crown.[3]

¶ 8    On December 17, 2017, Coffey Associates filed an answer and affirmative defenses pleading that: (1) Coffey Associates was entitled to a setoff; (2) Crown failed to mediate its damages; (3) Crown's damages were consequential, and it was not entitled to those because their agreement explicitly waived them in §8.1.4; and (4) Crown was prohibited from seeking recovery from Coffey Associates for breach of the contract pursuant to §5.5 and §5.9 of their contract.

¶ 9    On January 28, 2019, the trial court granted Crown's motion to voluntarily dismiss its indemnity claim.

¶ 10    On March 5, 2019, Crown filed a motion *in limine* to bar Coffey Associates from introducing evidence of Crown's sale price for the subject property. Crown argued that the sales price was not relevant because it did not prove or disprove the loss caused by Crown's reliance on

---

[3] As of the time of filing, Crown had been sued by Central Building in December of 2015 under case number 15 CH 18405 for work done on the subject property's hotel conversion project, and by Holiday Hospitality in May 2016 under Georgia case number 16 A60083-2 to recover liquidated damages as a result of the termination of the contract.

the contract it had with Coffey Associates. Further, Crown argued that Coffey Associates did not present opinion testimony that the property's value increased because of the work that Coffey Associates put into it.

¶ 11    On March 5, 2019, Coffey Associates responded to Crown's motion in *limine*, seeking its denial and arguing that there was no evidence that the city would not have denied the building permit if Crown had secured the easement from the adjoining property owner. Coffey Associates asserted that evidence of the sale price was relevant to its affirmative defense regarding a right to setoff.

¶ 12    At the hearing on the motion in *limine*, Crown argued that it spent over $2 million in reliance damages to convert the subject property from an office building to a hotel. Crown acknowledged that it purchased the property for $9 million and sold it for $21 million, due to an upward fluctuation of the housing market. Crown argued that a setoff could not be established without expert evidence, and it was too prejudicial in nature. Coffey Associates argued that it intended to prove a setoff at trial and that Crown was unable to demonstrate reliance damages because the property was not rendered useless, in fact, it was the easement that made the property more valuable.

¶ 13    The trial court ruled that the evidence of the value of the property was excluded, however, if one of Crown's witnesses "opened the door" to the value of the property, then it would have to let Coffey Associates cross examine on it. The trial court stated that something along the lines of mentioning how much money Tadros lost or how much the building lost would trigger evidence of the value of the property coming in. The trial court also determined that if Coffey Associates raised a claim of setoff it would have to be in a counterclaim and needed to be proven.

¶ 14                                    B. Trial

¶ 15    At trial, Coffey was called as an adverse witness in Crown's case-in-chief. Coffey testified that it was his responsibility to identify building code issues. However, when dealing with buildings from the 1920's or older, the code becomes more discretionary to the city. Coffey recalled that he would often schedule meetings with the city in order to resolve issues. Between 2012 and 2014, Coffey primarily worked with Asif Rahman (Rahman), a city employee, in regard to building code issues.  Coffey stated that he knew that the building code required that a hotel must have natural lighting in each hotel room and acknowledged that he knew Crown would be hiring other professionals in preparation for the construction of the hotel.

¶ 16    Coffey further testified that he and Romano met with the building department on several occasions where they asked questions and went into detail about carious code requirements. Coffey testified that he knew there was nothing preventing the adjoining property from building on the gangway, but, if they did it would be unlawful because the hotel would not be getting sufficient natural light. Coffey testified that he knew that Crown needed to get an easement from the adjoining property because of the December 31, 2013, meeting. Coffey claimed that they all knew something was going to be needed to get access for other matters and he believed that Tadros was working on obtaining access, but he was not privy to those conversations. Coffey specifically recalled a previous occasion when Tadros needed access to the gangway and received it from the adjoining property owner. Coffey informed the court that sometime after the meeting with the city, Tadros told him that he would get the easement because he felt it was his job. Thus, Coffey was not involved with the negotiations for the easement.

¶ 17    Instead of solely conducting a cross examination, the trial judge allowed Coffee Associates to begin its case-in-chief by combining its cross examination and direct examination of Coffey. During examination, Coffey recalled that he had met with Rahman on more than one occasion,

and they would always discuss the requirements for the subject property. Rahman did not bring up the easement issue until the December 31, 2013, meeting where Tadros was present.

¶ 18    Coffey testified that he was under the belief that Tadros knew of the easement requirement because the contract stated that all of the issues dealing with ownership, perimeter and legal matters were the owner's responsibility. Coffey stated that it was his understanding that easements tended to be legal issues that attorneys dealt with. Coffey recounted that there was a total of three architects and Tadros was in charge of coordinating them: namely, Coffey Associates, Knauer who worked on the hotel interiors, and Delf Gusitus who worked on the exterior of the building. Coffey recalled receiving a termination letter from Tadros with an effective date of December 7, 2015, and Tadros personally told Coffey that he sold the building, however, Coffey could not recall if he was personally informed before or after receiving the termination letter. On cross examination, Coffey denied that having to tell Crown about the easement was within the scope of their agreement.

¶ 19    Next, Crown elicited Tadros' testimony. Tadros testified that Coffey told him they could get permits before the end of 2012 which contributed to Crown's decision to hire Coffey and Associates. Tadros identified the August 17, 2012, proposal that Coffey gave him and indicated that he accepted the terms contained therein and paid $25,000 for Coffey and Associates to begin work. Tadros testified that he had entered into many contracts in anticipation of opening the subject property as a hotel and that Coffey was aware of this because of the many meetings they had. He did not recall being told that he needed an easement by Coffey Associates and would have never entered into those agreements had he known.

¶ 20    Tadros admitted that he, Rahman, Rahman's assistant, and Romano were all present for the December 31, 2013, permit meeting. Tadros testified that at the meeting, a discussion about

the use of the hotel ensued and Rahman did not want to proceed with the application because they had not obtained an easement for the adjoining property. Tadros recalled Romano stating that he was not aware that they needed an easement and he appeared shocked. Tadros testified that after the meeting he spoke with Romano who informed him that he would speak to Coffey about the matter and that he might know how to work around the issue. Tadros recalled that in the first week of January of 2014, he, Romano, and Coffey had a meeting where Romano informed him that neither he nor Coffey knew of the easement requirement. Tadros testified that he was seeking an easement from the adjoining property to either purchase the gangway that was between the two properties or to purchase the air above the gangway to restrict the owners from building on it. Tadros recalled that they never discussed an easement prior to the December 31, 2013, meeting with Rahman, however, some of Tadros' representatives were in contact with the adjoining property for other matters outside of the easement. Tadros testified that when he had previously worked with architects who outlined what was needed and worked with the city to see what was required of him. Tadros recalled one of the first meetings with Coffey Associates in August 2012, where Coffey assured Tadros that there was no need for him to meet with the city because the property was already zoned as a hotel.

¶ 21    Tadros testified that he called the adjoining property owner and then, at the owner's request, sent a formal letter on January 17, 2014, providing details of the project. Tadros stated that the adjoining property owner made many requests, and they were in constant correspondence and negotiations with each other from January 2014 until immediately prior to the sale of the subject property on December 5, 2014.  By the time the easement was finally obtained, Tadros had sold the subject property out of fear that Crown would never obtain the easement and he was continually spending money along the way. Consequently, all of the agreements with other

contractors terminated effective December 7, 2015. Tadros also stated that in an attempt to settle pending matters, sometimes Crown, an entity of Crown, or he paid the bills.

¶ 22    On cross examination, Tadros testified that as the owner it was his responsibility to obtain an easement and provide legal services pursuant to §5.5 of the AIA contract. Tadros understood that part of an architect's job was to provide plans. Tadros clarified that he was already in contact with the adjoining property about getting access and after the meeting on December 31, 2013, he additionally requested the easement. Tadros confirmed that he did not have Romano and Coffey assist him in getting the easement and that he undertook that himself.

¶ 23    At this point, outside of the presence of the jury, Coffey Associates argued that Tadros opened the door for evidence of the sale price of the subject property to be introduced when Tadros testified about value and how he and the building lost money. Coffey Associates contended that because a profit was made from the sale there were no damages. Coffey Associates insisted that because Tadros' testimony to the jury that he lost so much money was inherently untrue:  he actually made a $10 million profit. Crown asserted that the previous decision barring the value of the sale of the property should be upheld because it was possible to still be profitable even though it lost profits. Further, Crown argued that the amount of the sale was not relevant. The trial court expressed concern that the information was just being offered to prejudice Crown. Coffey Associates, however, argued that since Crown made a lot of money and a setoff was requested in the affirmative defense, the sales amount and profits were admissible. Additionally, Coffey Associates argued that Tadros made it appear that he was poor and did not make any money from the subject property and had to use his own money to pay bills thereby bringing his credibility into question.  The trial court expressed its concern that the impression from the testimony did appear

that Crown "lost his shirt." Therefore, the trial court took the arguments of the parties under advisement while the cross examination of Tadros continued.

¶ 24    Tadros testified that he was damaged by having to waste a lot of money and that it was Coffey Associates' fault. Tadros stated that the sale of the subject property was conditioned on Crown obtaining the easement from the adjoining property. Tadros denied that the easement was obtained faster at the prospect of the sale, and he insisted that the subject property and the adjoining property were in negotiations for the easement for approximately two years.

¶ 25    Anthony Fenton, a forensic architect, testified that he was hired by Crown, and, in his opinion, Coffey Associates did not perform its services within the standard of professional skill and care required by the parties' contract. Fenton assessed that an easement was required for the south wall in order for it to be compliant with the building code and Coffey Associates failed to identify the need for an easement. Fenton explained that Coffey Associates should have gone through a process as outlined by the AIA that provided a best practices approach. Fenton concluded that Coffey Associates' drawings were not in compliance with the building code because it did not contain an easement, resulting in a denial of the building permit.

¶ 26    On cross examination, Fenton testified that it was his understanding that it was the owner's responsibility to negotiate and secure the easement and that under the AIA contract Coffey Associates was not obligated to obtain such agreements. Fenton affirmed that he did not actually work in the field, but only researched and wrote reports in preparation for providing expert witness testimony.  Fenton also admitted he did not know why it took two years to get the easement but acknowledged that Tadros took it upon himself to do so. Fenton also acknowledged that even amongst city employees, interpretation of the code can vary, and negotiations can result in approval of a plan.

¶ 27    Counsel for Crown read into the record an excerpt from Romano's deposition in which he acknowledged that from the onset of the project, he knew any land to the south of the subject property was owned by the adjoining property. Romano testified that after being informed of the easement requirement, the next step was to get the easement and Tadros said he would do that. Romano testified that Tadros learned about the easement requirement when they attended a meeting with Rahman.

¶ 28    Crown rested its case-in-chief. Coffey Associates moved for a directed verdict and was denied.

¶ 29    Coffey Associates called Daniel Schuman who testified that he was a project manager for Central Building and Preservation (Central) from 2012 to 2013, which provided masonry work to Crown. Schuman testified that Central's contract with Crown required that the owner was to obtain access for the neighboring buildings on the south and north of the subject property. Schumann stated that it was the standard practice for owners and that Central required this to ensure that its employees would not be arrested for trespassing.

¶ 30    Outside the presence of the jury, the trial court decided that based on the previous arguments of the parties the sale price would not be introduced to the jury because it would be too prejudicial and irrelevant. However, the trial court found that it was important that the jury knew that Crown did not lose money, which the testimony at that point was beginning to indicate. Therefore, the trial court offered to instruct the jury that plaintiff made a profit from the sale of the subject property. Coffey Associates, however, sought to publish the information to the jury by recalling Tadros and eliciting said information from his testimony. Crown did not agree with either approach.  Ultimately, the trial court would allow Tadros to be recalled to testify.

¶ 31    Mark Dewitt, an architect, testified that he was hired by Coffey Associates and concluded that it met its standard of care and their contractual obligations. Dewitt stated that the permit process could require a lot of back and forth between the applicant and the city and it was impossible to anticipate all of what the city would require in one submission. Dewitt testified that when an easement was required, it was the responsibility of the owner to provide because it was a legal document that was outside of the scope of an architect. Dewitt maintained that under the AIA contract, it was Crown's responsibility to meet the legal needs in order to develop the subject property. Dewitt testified that it was outside the scope of an architect to evaluate an easement. Dewitt stated that it was his opinion that an easement with the adjoining property could have been obtained quickly had Crown complied with the adjoining property owner's checklist, but Crown did not comply. On cross examination, Dewitt acknowledged that while working as an architect, he would not expect his client to know about an easement requirement. Crown Associates rested its case-in-chief.

¶ 32    Based on the trial court's previous ruling admitting evidence regarding profits, Tadros was recalled. On redirect examination Tadros testified that he typically looked for long-term income producing properties. Tadros stated that the hotel was originally supposed to open on March 15, 2014, and that at no point prior to the sale did it generate income. Tadros clarified that, because he spent money but did not produce any money from the project, this meant he lost money. Tadros also testified that none of the money that was used to pay bills came directly from his personal account. Tadros concluded that he did not lead the jury to believe that he lost money on the project and acknowledged that he "made some" profit.

¶ 33    Prior to closing arguments, the trial court informed the jury as follows: "[a] closing argument is given at the conclusion of the case and is a summary of what an attorney contends the

evidence has shown. If any statement or argument of an attorney is not supported by the law or the evidence, you should disregard that statement." During closing arguments defense counsel made the following statements that are relevant to our review:

"He waited until the very last day of trial, and what does he do, he gets on that stand and finally tells you the truth.

* * *

He sat on that stand and finally told us the truth, he made money. Why so late? The last witness on the last day.

* * *

And did you notice his demeanor change? Did you notice that when I was able to question him that his demeanor changed? Yes, he now was a confident [*sic*], raising his voice real estate developer. He was no longer sitting there going, oh, I paid this and I paid that and Mr. Coffey's so smart. Two different people Tuesday and Wednesday to yesterday.

* * *

I think lawsuits are about right and wrong. They're not about making money. They're not about getting your costs back. It's about right and wrong. It really is that simple. He made a profit.

* * *

And so, what does he say, the dominant person in this relationship between a developer and architect, is I want my money back. I want all of my costs. I want a windfall. That's not what this is about. We don't ask you to come in and give public service here so I get a windfall."

¶ 34    Crown made objections to the first two statements but was overruled.  The jury then rendered its verdict in favor of Coffey Associates finding that it did not breach the contract.

¶ 35                                C. Posttrial

¶ 36    On November 25, 2019, Crown filed a motion for a new trial because: (1) the trial court erred in admitting testimony from Tadros that Crown made a profit from selling the subject property; (2) the timing of the ruling was prejudicial to Crown since it was done mid-trial and that the sale of the property was irrelevant; (3) the trial court erred when it allowed Coffey Associates to repeatedly argue, in closing, over Crown's objections, that Crown did not disclose having made a profit until the last day of trial; and (4) the verdict was against the manifest weight of the evidence when the Coffey and Dewitt testified to breaching the contract.

¶ 37    On January 10, 2020, Coffey Associates responded arguing that Tadros "opened the door" to the evidence of profits when he continuously testified that he lost money on the subject property. Coffey Associates maintained that the verdict was not against the manifest weight of the evidence because witnesses Fenton, Coffey, and Dewitt, all testified that Coffey Associates performed its services consistently with the professional skill and care required under the contract.

¶ 38    On July 6, 2020, the trial court entered an order denying Crown's motion for a new trial. On July 30, 2020, Crown filed this timely appeal.

¶ 39                                II. ANALYSIS

¶ 40    On appeal, Crown contends that: (1) the trial court erred when it allowed profits to be introduced into evidence; (2) the trial court erred when it allowed Coffey Associates to continuously make improper comments in regard to the profits; and (3) the trial court erred when it denied Crown's motion for a new trial because the evidence at trial demonstrated that Coffey Associates breached the contract.

¶ 41                                        A. Profits

¶ 42    Crown argues that the trial court should have sustained its previous pretrial ruling where it found that it was Coffey Associates' burden to refute or reduce Crown's reliance damages by showing how they "added value" or contributed to the sales prices of the subject property citing *MC Baldwin Financial* Co. *v. DiMaggio, Rosario, Veraja, LLC*., 364 Ill. App. 3d 6, 14 (2006), as support. Crown asserts that the evidence of profits would not have been relevant unless Coffey Associates helped contribute to it. Crown contends that after the testimony of Tadros, the court allowed Coffey Associates to mitigate its breach by allowing evidence of profits without requiring them to first provide proof of how its services contributed to the increased value of the subject property. Crown maintains that the evidence of the profits was so prejudicial, that it rendered a jury verdict in favor of Coffey Associates despite the overwhelming evidence to the contrary that was presented at trial.

¶ 43    Both parties allege an abuse of discretion standard should be utilized, however, Crown asserts that damages are relevant to the evidentiary ruling, while Coffey Associates asserts that the matter is solely an evidentiary issue Coffey Associates further asserts that the issue that Crown raises about profits is not relevant because the jury found Coffey Associates not liable and errors concerning the extent of damages are generally not reversible, citing *Castillo v. Stevens*, 2019 IL App (1st) 172958, ¶ 46, as support.

¶ 44    We review the admission of evidence using an abuse of discretion standard. *Clayton*, 346 Ill. App. 3d at 377. An abuse of discretion occurs when the trial court adopts a view that no reasonable person would make. *Id*. However, before we address the evidentiary ruling, we will address Crown's contentions regarding damages because the existence of damages is relevant to the evidence entered at trial.

¶ 45    In order to show a breach of contract, a plaintiff must show that: (a) a contract exists between plaintiff and defendant, (b) plaintiff performed its obligations under the contract, (c) defendant did not perform its obligations under the contract, and (d) damages resulted from the breach. *Walker v. Ridgeview Const. Co., Inc.*, 316 Ill. App. 3d 592, 595-96 (2000).

¶ 46    In a breach of contract action, the basic theory of damages requires that in order for a plaintiff to recover they must establish an actual loss or measurable damages resulting from the breach. *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19. "The proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *Id.* Plaintiff should not be placed in a better position and obtain a windfall recovery. *Id.* Damages which "naturally and generally result from a breach are recoverable." *Id.* If damages are not the proximate cause of the breach, they are not allowed. *Id.* Damages are an essential element of a breach of contract action and a plaintiff's failure to prove damages entitles the defendant to judgment as a matter of law. *Id.*

¶ 47    Even if this court assumed that Crown presented all of the elements needed to demonstrate a breach of contract outside of damages; it still failed to prove damages. Damages in general require that the breach be the proximate cause of it in order to be recoverable. *In re Illinois Bell*, 2013 IL App (1st) 113349, ¶ 19. Although Crown presented evidence of contracts it entered into, the sale of the property appeared to be the proximate cause of why the parties did not continue to proceed with those contracts, not Coffey Associates' failure to notify Crown of the easement requirement. Accordingly, Crown failed to demonstrate that they suffered any loss from Coffey Associates' alleged failure to comply with the AIA contract. *Id.* Crown could have proceeded with the project, which was evidenced when it eventually obtained the easement. Instead, the evidence demonstrated that Crown chose to terminate its AIA contract with Coffey Associates and others

when it sold the property. Thus, Crown may not receive a windfall by selling the subject property, terminating its contracts, and getting refunded from Coffey Associates. *Id.*

¶ 48    We will now address the issue of the trial court's evidentiary ruling that allowed Crown's profits into evidence. Evidence that is irrelevant is not admissible. *McHale v. W. D. Trucking, Inc.*, 2015 IL App (1st) 132625, ¶ 89. "[E]vidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action either more or less probable [than] it would be without the evidence." *Id.*

¶ 49    Indeed, Crown is correct, this court has consistently held that a setoff must be pleaded as a counterclaim. *Nadhir v. Salomon*, 2011 IL App (1st) 110851, ¶ 37. At trial, Coffey Associates did not present a counterclaim, therefore, the profits were not allowed to be entered on that basis. However, we do not find the trial court's ultimate decision to admit the sale price to be an abuse of discretion. The admission of the evidence of profits went to the facts testified to by Tadros, who continuously expressed that he and the subject building were at a loss because of Coffey Associates' alleged breach. The trial court decided that Crown was giving the jury the impression that "he lost his shirt," and therefore, instead of admitting this evidence based on the affirmative defense of a setoff, the trial court admitted it in an effort to balance the jury's impression of Crown's financial standing after the sale.  In continuing to strike a balance that was not prejudicial to Crown, the trial court decided to exclude the admission of the exact amount of the profits, and instead only allow the sale price. Given this balance that the trial court sought and maintained, we do not find the introduction of profits into evidence was an abuse of discretion. *Clayton*, 346 Ill. App. 3d at 377. Accordingly, we do not find that the trial court reversing its decision to bar the evidence of profits pursuant to the motion *in limine* to be an abuse of discretion given the facts, it was within its sound discretion to do so. *McHale*, 2015 IL App (1st) 132625, ¶ 89.

¶ 50                         B. Closing arguments

¶ 51    Crown contends that defense counsel made an improper closing argument regarding profits by not basing the argument on actual evidence and implying that Tadros was attempting to hide evidence, which is impermissible citing *Cancio v. White*, 297 Ill. App 3d 422, 435 (1998). Crown asserts that Coffey Associates knew why Tadros did not speak about the profits until the end of trial; because of the trial court's reversal. Of its initial decision. In addition, Crown contends that defense counsel painted Tadros as being voracious for money and one who was seeking a windfall. Crown asserts that this depiction was improper because it referred to Tadros' financial position. Next, Crown contends that the statements from defense counsel regarding Tadros wanting a windfall and not being moral in pursing this lawsuit were inflammatory and incited prejudice. Lastly, Crown asserts that a new trial is warranted since defense counsel made accusations of dishonesty and bad character throughout the closing argument.

¶ 52    Coffey Associates contend that Crown has forfeited raising certain objections because it failed to object to all but two of the statements made by defense counsel in closing. Coffey Associates contend that defense counsel made reasonable comments based on the evidence, as it related to the statements regarding the profit realized from the sale of the building. In its reply brief, Crown contends that it was not required to make any further objections because the trial court had made its position abundantly clear on the matter citing, *Sharbono v. Hilborn*, 2014 IL App 3d 120597, ¶ 29, as support.

¶ 53    During closing arguments, attorneys are afforded wide latitude to comment and argue on the evidence and any inference that may be fairly drawn from that evidence. *Clarke v. Medley Moving and Storage, Inc.,* 381 Ill. App. 3d 82, 95 (2008). Improper comments by an attorney will constitute reversible error only where the comments are so prejudicial as to deprive the other party

of the right to a fair trial. *Id.* "Issues concerning the prejudicial effect of comments made during closing argument are within the discretion of the trial court, and determinations regarding such issues will not be reversed absent a clear abuse of discretion." *Id.* We may not substitute our judgment for that of the trial court, while determining whether an abuse of discretion occurred. *Id.*

¶ 54 We disagree with Crown; it was not abundantly clear that the trial court would have overruled the statements that defense counsel made because they are not the same. The first two statements that were objected to were in regard to the admission of the profit and timing, whereas the remaining statements go into detail about Tadros' demeanor, defense counsel's opinion on right and wrong, and the relationship dynamic between Tadros and Coffey Associates. Throughout the proceedings, the trial court continuously demonstrated that it sought to strike a balance of fairness between the parties. Although its stance was clear in regard to the admission of profits, the trial court was adamant that nothing more outside of its ruling should be introduced, which is why the actual sales price was never introduce. Thus, the trial courts position on the remaining statements were not clear. *Id.*

¶ 55 "Both an objection at trial and a written post-trial motion raising the issue are necessary to preserve an error for appellate review." *Orzel v. Szewczyk*, 391 Ill. App. 3d 283, 287 (2009). Further, this court has held that the failure to object to allegedly improper comment will result in forfeiture of the objection and forfeiture of the issue on appeal. *Babikian v. Mruz*, 2011 IL App (1st) 102579, ¶ 13. Accordingly, Crown's failure to object to the statements and include them in a posttrial motion results in forfeiture of those issues and will not be discussed here. We will, however, address the statements that Crown has preserved for appeal regarding evidence of the profits.

¶ 56     This court has held that a statement made in closing argument is improper if it implies a party is hiding evidence. *Cancio*, 297 Ill. App 3d at 435.  See also *Rutledge v. St. Anne's Hospital*, 230 Ill. App. 3d 786, 791 (1992) (a comment by defense counsel in a closing argument that implied plaintiff did not want the jury to hear a witness was found misleading and improper when the parties previously  agreed by stipulation that the same witness was unavailable). The *Cancio* case involved an improper statement in a closing argument relating to evidence that was never introduced to that court, the implication being that it was not presented because the opposing party had failed to produce it in order to hide it. *Id.* In this case, the statements that defense counsel objected to did imply that there was an attempt to hide the evidence of the profits from the jury. Given that the motion *in limine* and the subsequent ruling of the trial court to allow the evidence of profits in were heard outside of the jury, this left the jury with the implication that this maneuver was due to something sinister on Tadros' account. Additionally, defense counsel gave the jury the implication that Tadros attempted to hide evidence by waiting until the last day of trial to divulge the profits, when actually it was the trial court's late ruling, at Coffee Associates' urging, regarding the admission of the evidence that led to the late disclosure.  We find that, given the facts as supported by the record herein, defense counsel's closing statements regarding the purported withholding of evidence were improper.

¶ 57     While defense counsel's closing statements were indeed improper, we do not find the statements to be so significant as to deprive Crown of a fair trial. *Lauman v. Vandalia Bus Lines Inc.*, 288 Ill. App. 3d 1063, 1071 (1997). Given the evidence presented by both parties it cannot be said that these comments changed the outcome of the trial. We find that the jury reasonably relied on the evidence presented by Coffey Associated demonstrating that it had no prior knowledge of the easement requirement.  Further, Coffey Associates had reason to believe that

Crown was handling matters regarding the easement just as it had regarding access to the gangway for the other architects on the project. Finally, the jury may have reasoned that the evidence of profits demonstrated that Crown was not damaged even if Coffey Associates did breach the AIA contract. As such, the verdict does not demonstrate any undue influence or prejudice based on the improper statements. Coffey Associates presented evidence that, if accepted by the jury, would lead to a verdict in its favor. Further, the trial court admonished the jury that closing arguments summarized evidence and if that was not supported by law or evidence, it should be disregarded. In sum, Crown has not shown that it was substantially prejudiced or unduly affected to the extent that a new trial would be warranted. *Lauman,* 288 Ill. App. 3d at 1071.

¶ 58                                 C. New Trial

¶ 59    Next, Crown contends that the trial court erred in denying it's motion for a new trial. Crown maintains that the evidence at trial demonstrated that Coffey Associates breached the following sections of the AIA contract:

> "§2.2. The Architect shall perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances. The Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project.

* * *

> §3.16. The Architect shall, at appropriate times, contact the governmental authorities required to approve the Construction Documents and the entities providing utility services to the Project. In designing the Project, the Architect shall respond to applicable design requirements imposed by such governmental authorities and by such entities providing utility services.

* * *

§3.4.2. The Architect shall incorporate into the Construction Documents the design requirements of governmental authorities having jurisdiction over the Project."

According to Crown, breach of the aforementioned sections was supported by the testimony of Coffey Associates expert, thereby making the verdict against the manifest weight of evidence citing *Mizowek v. De Franco*, 64 Ill. 2d 303 (1976), as support. Crown contends that Coffey Associates knew about the noncompliance along the south side of the property but failed to advise them and failed to arrange a meeting with the city in order to discuss compliance issues. Specifically, Crown maintains that Coffey Associates designed the plans without providing the required access to natural light, and accordingly those plans were rejected by the city as nonconforming. Crown contends that Coffey Associates knew that Crown would need to obtain an agreement with the adjacent property owner ensuring that they would not build in the gangway but never told Crown; instead, it was the city who informed Crown.

¶ 60 Coffey Associates, however, contend that it was reasonable to anticipate that the city would approve their plans, and the jury's verdict of no breach was entirely supported by the evidence presented at trial. Coffey Associates assert that the evidence at trial demonstrated that it met with the city on several occasions and there was no indication that there was a violation related to the south-facing windows. Coffey Associates contends that the assertion that it knew it knew it was not in compliance and kept that information from Crown is misleading. Coffey Associates maintains that Coffey testified that he and Tadros learned for the first time that the city would require an easement for the south-facing windows simultaneously at the project meeting with Asif on December 31, 2013. Further, Coffey Associates assert that Dewitt testified that sometimes the city could interpret the building code in unexpected ways and rejects Crown's contention that Coffey and Dewitt both admitted to Coffey breaching the contract. According to Coffey and

Dewitt's testimonies, there is no specific formula to be applied, there is no requirement for the easement in the code, and easements are not commonly put in architects plans.

¶ 61    A trial court's decision of whether to grant a new trial is reviewed for abuse of discretion. *Hana v. Illinois State Medical Inter-Ins. Exchange Mutual Ins. Co.,* 2018 IL App (1st) 162166, ¶ 15. The trial court is in a superior position to consider errors that occurred, the fairness of the trial to all parties, and whether substantial justice was accomplished. *Id*. "A court of review must take into consideration not only the verdict of the jury, but also the fact that the trial judge, who saw and heard the witnesses and arguments of counsel denied the moving party's post-trial motions." *Cadral Corp. v. Solomon, Cordwell, Buenz & Associates, Inc.*, 147 Ill. App. 3d 466, 483 (1986).

¶ 62    We note that the trial court denied the motion for a new trial without comment, and it appears from the record that there was no hearing on the matter due to Covid-19 restrictions. That being said, this reviewing court may affirm the trial court's decision for any reason appearing on the record even if it was not expressly stated by the trial court. *People v. Sims*, 167 Ill. 2d 483, 500 (1995).

¶ 63    As discussed previously, in order to show a breach of contract, a plaintiff must show a contract exists, plaintiff performed, defendant did not perform, and damages that resulted. *Walker*, 316 Ill. App. 3d at 595-96. Based on the evidence, we cannot say that the jury's verdict is contrary to the evidence presented. The trial court heard the evidence and arguments presented to the jury and proceeded to deny Crown's motion for a new trial.

¶ 64    At trial, Crown presented evidence of the AIA contract wherein the parties agreed that Coffey Associates would perform its services with the same professional skill as those within the locality, get in contact with the appropriate governmental authority and respond to the requirements requested of it, and incorporate the requirements of the jurisdiction. Crown presented

the testimony of Fenton, who concluded that Coffey Associates failed to perform with the same skill as those within the locality. Additionally, on cross examination, Coffey Associates' expert, Dewitt, testified that he would not expect his client to know that an easement was required of it. Nevertheless, as we previously discussed, Crown was unable to establish damages as a result thereof.

¶ 65 Contrary to Crown's contention that Coffey's testimony supported a finding in its favor, Coffey never made any admission of wrongdoing when he testified. Instead, Coffey testified that the easement was to be obtained by the owner and it was a legal document that needed to be drafted by an attorney. Further, Coffey testified that to his knowledge Tadros was arranging access to the gangway for other architects and he maintained that he was never privy to those decisions, before or after they were notified of the easement requirement. Also, contrary to Crown's contention, Coffey testified that Coffey Associates did not know that the easement would be a requirement until the December 31, 2013, meeting that Tadros also attended. Further, Coffey Associates elicited testimony from Fenton that he had limited experience of architecture in general and acknowledged that the city employees can all interpret the building code differently. Although Crown presented evidence to show a breach in the AIA contract, Coffey Associates presented evidence at trial in rebuttal. Therefore, based on the evidence presented, it would not be unreasonable for the jury to find in favor of Coffey Associates when no damages were shown and when the evidence presented, if believed by the jury, would lead to a verdict in its favor. We find no error in the trial court's decision to deny the motion for a new trial. *Hana,* 2018 IL App (1st) 162166, ¶ 15.

¶ 66                                    III. CONCLUSION

¶ 67 Based on the foregoing discussion, we affirm the judgement of the trial court.

¶ 68    Affirmed.